STATE OF NEBRASKA, APPELLEE, V. HERBERT D. SWILLIE, APPELLANT.

484 N.W.2d 93

Filed May 22, 1992.   No. S-91-123.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

GRANT, J.

Following a jury trial in the district court for Douglas County, defendant, Herbert D. "Willie" Swillie, was convicted of assault in the first degree, in violation of Neb. Rev. Stat. § 28-308 (Reissue 1989), and sentenced to 2 to 3 years in prison, with credit given for time served. Defendant timely appealed, assigning a single error: "The District Court committed reversible error by denying the Defendant's motion for a mistrial based on statements made by the prosecutor to the jury in his final argument." We affirm.

In reviewing a criminal conviction, the Supreme Court must view the evidence in the light most favorable to the prevailing party. *State v. Red Kettle*, 239 Neb. 317, 476 N.W.2d 220 (1991). We do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finders of fact, and the verdict will be affirmed, in the absence of prejudicial error, if properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Timmerman, ante* p. 74, 480 N.W.2d 411 (1992). Viewed in that light, the record shows the following:

On Thanksgiving Day, November 23, 1989, the victim, a 40-year-old woman, was brutally beaten. A doctor who examined the victim testified that the victim sustained a broken cheekbone, a broken nose, and a punctured eardrum and that her face was "massively swollen." The victim had visited her family from about 3 p.m. to approximately 5 or 6 p.m. for Thanksgiving dinner and then visited a neighbor. After the visit, Jewell Combs walked the victim to the victim's home. At about

8 p.m., when the victim and Combs had been in the victim's house for 5 or 10 minutes, Billy Wright, a longtime friend, arrived. The three visited and had a drink, and Combs left.

Wright then told the victim he had friends waiting out in the car, and the victim told him to invite them in. Wright brought in the defendant and a girl. Wright asked the victim if she knew who the defendant was, and she said that he was Willie Swillie. The victim testified that she did not know that defendant's real name was Herbert until a police officer told her later. After the four visited for a time, Wright asked the victim if she knew where he could get drugs and if she had a syringe. The victim responded "no" to both questions.

Wright and the girl left for about 15 minutes to go to a liquor store, leaving the defendant and the victim in the victim's residence. The defendant made unwelcome advances, which the victim rebuffed. The defendant and the victim then talked about their families and childhoods.

Wright and the girl returned, and Wright and the defendant immediately consumed a fifth of wine. Wright and the girl again left. The victim testified she thought they were going back to the liquor store. When the victim and defendant were alone again, defendant made another advance at the victim and then asked her if she had a syringe. The victim testified that she jokingly said she did and that "I took him to my bathroom and I pointed at my douche bag. And to me it was funny, you know; but evidently it wasn't funny to him because then he started hitting me."

Defendant beat the victim's head into the commode so hard that a piece of the commode broke off. The victim tried to push defendant out of the bathroom, but he continued to beat her. The victim ran into her bedroom to find a knife she had hidden there, but defendant knocked it out of her hand and continued to beat her.

The victim was able to escape, and she ran to a neighbor's house, but no one answered the door. As she was trying to get to another neighbor's door, defendant caught her and dragged her back to her house. Defendant continued to beat the victim until she was unconscious.

When the victim regained consciousness at about 7 or 8

o'clock the next morning, she was lying nude on the hide-a-bed, with the front door of her house wide open. There was blood on the victim's clothes, furniture, and sheets.

The victim went next door, and the neighbors summoned an ambulance and the victim's parents. The victim told the neighbor and a police officer that her attacker was Willie Swillie. At the time of hospitalization, 9:30 a.m., the victim's blood alcohol level was .318, but the doctor testified that when the victim was addressed, the victim appeared oriented and was able to answer questions satisfactorily. She was able to answer questions about her medications and medical history. The victim is an admitted alcoholic and had been drinking heavily on Thanksgiving Day, although she testified she was not intoxicated. The victim was hospitalized for 2 days and after that had to remain in the care of her family for some time.

The victim positively identified the defendant in the courtroom as the man she knew as Herbert Swillie. The victim had known the defendant for 25 years. She and the defendant's sister had gone to high school together, and she and the defendant had remained acquainted in the interim. She stated she had no difficulty recognizing the defendant. She has always maintained that it was defendant who attacked her and testified that there was no doubt in her mind that defendant was the attacker.

Defendant's attorney first mentioned the fact that the police investigating the incident initially thought the charge against defendant should be handled as a misdemeanor. The attorney asked the police officer who investigated the incident, "And isn't it true that when you called the regional investigator, told them basically that you have an intoxicated woman that's been assaulted here and the regional investigator said, nothing more needs to be done with this case?"

The officer responded:

> No. [I] advised [Sergeant Brooks] that at this time the doctor stated that due to the swelling they weren't sure if there were, in fact, broken bones or not and at that time the doctor mentioned that [the victim] would be treated and released. I advised Sergeant Brooks of that and he stated to advise her of a warrant procedure, misdemeanor

warrant procedure . . . .

The police officer further testified on cross-examination that he advised the victim "how to file a misdemeanor warrant."

The victim testified that she was told by a police officer that she could file a complaint with the city prosecutor and that the attack would be prosecuted as a misdemeanor. On December 4, 1989, the victim went "down to this courthouse to the second floor" and filed a complaint against defendant. On April 11, 1990, the victim appeared at "a court proceeding" and testified that defendant had assaulted her.

Defendant's attorney brought out the following evidence of the "prior proceeding" during cross-examination of the victim:

Q. You have testified, have you not . . . at another hearing in this case; correct?

A. Yes.

Q. Under oath?

A. Yes.

Q. And in front of a Judge?

A. Yes.

Later, the defense attorney again returned to the subject of the "prior proceeding."

Q. Okay. So the police officer told you how to file a private complaint and then after you got out of the hospital your dad told you to go down and file the private complaint?

A. Yes.

. . . .

Q. Okay. And the next time that you have any court proceedings about this after you come [sic] up to the city prosecutor's office and file a complaint is April 11th, 1990; correct?

A. Yes.

. . . .

Q. And they called the case of State versus Herbert Swillie; that was your case that you filed and this person was standing up there next to some lawyer that was with him?

A. Uh-huh.

Q. And that is the first time since November 23rd, 1989

that you see [sic] this person; correct?

A. That's the first time that I saw him.

Q. Since November 23rd, 1989, was in court when you testified and pointed him out as the person who assaulted you?

A. His arrangement [sic].

Q. And you saw him at an arrangement [sic]?

A. Yes.

Q. Okay. And at arrangement [sic] he walked up in front of the judge?

A. I went up there also, too, and he pleaded not guilty.

In response, on redirect examination of the victim, the prosecutor also inquired into the "prior proceeding."

Q. And as far as the progress of this case and the way it's gone, you don't run the criminal justice system in Omaha, Nebraska, do you?

A. No, I don't.

Q. And the police told you that it was a misdemeanor and to go follow the misdemeanor procedure?

A. That's right.

. . . .

Q. And so basically when you were going through your misdemeanor process you were just one case just like all the rest of the cases that were being lunch-lined through that day?

A. Right.

Q. And until the judge heard what happened to you?

A. Yes.

Q. And then you went upstairs [to the county attorney's office]?

A. Yes.

The defense made no objection to this testimony.

Defendant bases his claim of prosecutorial misconduct on the following emphasized statement made by the prosecutor during final argument:

She came down, filled out her Affidavit just like she was told and, again, Herbert D. Willie Swillie did this to me. The trial date is set off and as we were, I think one of my questions — it is not her answer, it was my

characterization of it, but she was lunch-lined through there just like everyone else on April 11th, 1990. And, again, this is the guy that beat me up; this is the guy that did this to me with her home-grown pictures. Doesn't even have a police photo of what happened to her. *And at that point the judge stopped it and did what should have been done and it was sent upstairs to felony court where it is now before you.*

(Emphasis supplied.)

The defendant objected and moved for a mistrial, claiming that the prosecutor was arguing evidence not before the jury: "He's explaining to the jury procedures in the legal system that are not before this jury and what it does is that it gives more credibility that a judge says."

> Whether prosecutorial misconduct is prejudicial depends largely on the facts of each case. . . . The impact of any comment made at trial depends on the atmosphere at trial. The trial judge is in a better position to measure the impact a comment has on a jury, and his decision will not be overturned unless clearly erroneous. . . .
>
> The general rule is that remarks of the prosecutor in final argument which do not mislead or unduly influence the jury do not rise to a level sufficient to require granting a mistrial. . . .
>
> . . . Further, it is not prejudicial for the prosecutor to make remarks based on deductions and inferences drawn from the evidence.

(Citations omitted.) *State v. Benzel*, 220 Neb. 466, 477-78, 370 N.W.2d 501, 511 (1985).

The defendant argues that the prosecutor's comment was "intended to direct the jury to the conclusion that the lower court judge felt that this was a very severe case. The prosecutor's remark would lead a reasonable juror to believe that the Defendant was guilty." Brief for appellant at 6. The prosecutor's statement, however improper, did not address the question of the identity of the defendant as the person who had committed the assault.

Defendant had opened the door to probing questions and statements as to the nature of the "prior proceedings."

Defendant seemed to contend that the victim had done something wrong in treating the matter as a misdemeanor and that something was wrong when a judge ordered the matter to be treated as a felony. Defendant did not object to questions directed by the prosecutor to the victim setting out what happened.

In addition, defendant has not shown any prejudice to defendant because of the prosecutor's statement. In *State v. Greeno*, 230 Neb. 568, 572, 432 N.W.2d 547, 551 (1988), we stated: " 'The impact of any comment made at trial depends on the atmosphere at trial. The trial judge is in a better position to measure the impact a comment has on a jury, and his decision will not be overturned unless clearly erroneous.' "

Had the dispositive question before the jury been whether the injuries to the victim were serious enough to constitute assault in the first degree ("serious bodily injury," resulting in a felony charge) or assault in the third degree ("bodily injury," resulting in a misdemeanor charge), defendant's argument would be persuasive. The judge in the lower court apparently did determine that the victim's injuries constituted "serious bodily injury" and that the matter should be handled as a felony. The judge did not indicate that defendant was the person who committed the assault.

Defendant apparently agrees that the severity of the injuries is not in question. His counsel argued to the jury: "The question is not the brutality of the beating because, in fact, we do have a serious bodily injury here. The question is whether my client did it . . . ."

The lower court did not abuse its discretion in refusing to grant defendant's motion for a new trial. The lower court's determination that the matter should be handled as a felony is consistent with the requirements of Neb. Rev. Stat. § 29-510 (Reissue 1989). Defendant's assignment of error is without merit.

AFFIRMED.