STATE OF NEBRASKA, APPELLEE, V. LLOYD R. TRACKWELL, JR., APPELLANT.

509 N.W.2d 638

Filed January 14, 1994.   No. S-93-192.

Vincent M. Powers for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

FAHRNBRUCH, J.

Lloyd Trackwell, Jr., was convicted of first degree sexual assault by a jury in the district court for Seward County. He was sentenced to not less than 10 nor more than 50 years' imprisonment.

Claiming prosecutorial misconduct, errors in evidentiary rulings, failure to give a requested jury instruction, and that the evidence is insufficient to support his conviction, Trackwell timely appealed his conviction and sentence to this court. We vacate his conviction and sentence and remand the cause to the district court for a new trial.

## STANDARD OF REVIEW

In reviewing a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and the verdict of the jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Thompson, ante* p. 375, 507 N.W.2d 253 (1993); *State v. Russell*, 243 Neb. 106, 497 N.W.2d 393 (1993).

## FACTS

The record reflects that on the evening of January 23, 1992, Trackwell; his alleged victim, an 18-year-old female; and two other individuals met at Trackwell's office in Lincoln. Trackwell and the alleged victim had not previously been acquainted. The other two individuals, a 16-year-old female and a 35-year-old male, were friends of the alleged victim and lived in an apartment across the hall from her.

The alleged victim and her two friends initially stopped at Trackwell's office so the male friend could discuss a business matter with Trackwell. The male got out of the car to talk to Trackwell while the two females waited in the vehicle. Trackwell

then joined the group, and the foursome spent the rest of the evening drinking beer and driving on Interstate 80 toward Omaha and back to Lincoln.

At some point the group returned to Lincoln, where all four parties lived. The alleged victim claims that she wanted to return to her apartment because she was tired and that the other three parties wanted to continue drinking. Upon returning to Trackwell's office, the alleged victim agreed to accompany Trackwell in his vehicle to her apartment building so she could show Trackwell where the other two parties lived.

Rather than driving eastward toward the apartment building, Trackwell drove west on O Street during the early morning hours of January 24, eventually coming to a stop on a county road in rural Seward County. The alleged victim testified that prior to stopping the vehicle, Trackwell put his hand on her leg, but removed his hand from her leg when she told him to do so. She testified that Trackwell then called her a "stupid bitch" and forced her out of the car, even though she was clad only in cutoff sweatpants and a T-shirt and it was cold outside. Trackwell drove forward, then reversed the car and allowed the alleged victim to get back into the vehicle.

The alleged victim testified that Trackwell drove into a field, forcibly removed her clothing after she refused to remove it, and sexually penetrated her twice. The alleged victim testified that Trackwell then allowed her to dress and drove her back to her apartment building in Lincoln. The alleged victim first went to her friends' apartment and told them what had occurred. She then went to her own apartment, showered, and took a nap before calling police to report the incident.

On June 2, 1992, Trackwell was charged by information with first degree sexual assault and first degree false imprisonment. The false imprisonment charge was dismissed by the court upon conclusion of the State's case.

Trackwell testified that the alleged victim agreed to go for breakfast with him. The other two members of the group returned to their apartment. He testified that he and the alleged victim then decided not to have breakfast, although nothing was said verbally. Trackwell does not deny having sexual intercourse with the alleged victim. He claims that they had sex

only once and that it was consensual. Trackwell testified that he "freaked" and forced the alleged victim out of his car and started to drive away because after they had intercourse, she told him she was only 16 years old. Trackwell testified that he did not intend to leave the alleged victim and that she later told him she was joking about her age.

At trial, the State called Waheed Malik as a witness. Malik's roommate had introduced Malik to Trackwell. Malik testified that Trackwell had dinner with Malik and his roommate on Friday evening, the day following the alleged assault. According to Malik, Trackwell bragged about his adventures of the previous evening and said that he "scared the shit out of the bitch" by making her get out of the car. Malik testified that Trackwell said he had sex with the alleged victim a couple of times after he let her back in the car, and that when Malik suggested that this was rape, Trackwell "just started laughing."

Malik testified that he called the Seward County Attorney's office the following Monday and spoke to a secretary but did not leave his name. He said he made "quite a few" calls to the county attorney's office but was unable to reach the county attorney or her deputy until May 1992.

Malik admitted on cross-examination that he was engaged in civil litigation with Trackwell during May 1992 which continued through approximately October 1992. The litigation involved repossession of Malik's Mercedes-Benz automobile by Trackwell, who operated a collection agency.

Trackwell's attorney in the civil case testified that during the course of a hearing in September or October 1992, Malik became very agitated and said, "[Y]ou'll be sorry for this Trackwell. This is really going to cost you Trackwell." The attorney also recalled that Malik then said "something about Seward County."

Malik denied making such statements or that his testimony against Trackwell in the criminal case was in any way an attempt to get even with Trackwell because of the civil litigation.

During her closing statement, the prosecutor stated in rebuttal:

> [Trackwell's] had a couple people come up and testify
> about Waheed Malik's testimony, why that's not believable

because he said something that may have related to a civil [suit] in a courthouse in Lincoln. Waheed Malik had nothing to gain from testifying here. He testified *and he called my office the following Monday, and my secretary told me someone called about the Trackwell case.*

(Emphasis supplied.)

Defense counsel immediately objected that there was no evidence to support the prosecutor's statement and moved for a mistrial, both of which were overruled.

An hour after the case was submitted to the jury, the jury requested a transcript of Malik's testimony. The request was denied, and Trackwell was found guilty of first degree sexual assault.

## ASSIGNMENTS OF ERROR

On appeal, Trackwell alleges that (1) the trial court erred in not sustaining his objection and motion for mistrial for prosecutorial misconduct when the prosecutor testified and corroborated the testimony of a State's witness, (2) the trial court erred in not allowing him to call the Seward County Attorney to testify to prior inconsistent statements made by the alleged victim and another witness, (3) the trial court erred in failing to give his requested jury instruction on intent, (4) the evidence is insufficient to support the conviction and is contrary to law and fact, and (5) his sentence is excessive.

## ANALYSIS

### PROSECUTOR'S CLOSING REMARKS

We initially turn to the issue of whether the prosecutor's closing remarks were improper. A prosecutor's argument must be based on evidence introduced rather than on matters not in evidence. *State v. Pierce,* 231 Neb. 966, 439 N.W.2d 435 (1989). It is a well-established legal principle that it is improper for counsel to comment during closing argument on matters unsupported by the evidence. *State v. Rodriguez, ante* p. 707, 509 N.W.2d 1 (1993).

When the prosecutor stated in her rebuttal remarks that "he called my office the following Monday, and my secretary told me someone called about the Trackwell case," she assumed the

role of a witness and corroborated Malik's testimony that he had reported his knowledge of Trackwell's possible criminal activity in a timely fashion. The prosecutor's comment as to what her secretary had said was a fact not in evidence. Neither the prosecutor nor her secretary was a witness in the case, and therefore they were unavailable for cross-examination by the defense. There is no question that the prosecutor's comments were improper.

Because the trial court overruled both Trackwell's objection to the prosecutor's comments and his motion for mistrial, we first determine whether the trial court properly overruled the objection. " 'The impact of any comment made at trial depends on the atmosphere at trial. The trial judge is in a better position to measure the impact a comment has on a jury, and his decision will not be overturned unless clearly erroneous. . . .' " *State v. Swillie*, 240 Neb. 740, 746, 484 N.W.2d 93, 96 (1992).

Trackwell correctly objected that there was no evidence whatsoever to support the prosecutor's statement that her secretary had told her someone had called about the Trackwell case, because the prosecutor's secretary had not testified at the trial. Therefore, Trackwell's objection should have been sustained, and the trial court's failure to do so was clearly erroneous.

Next, we determine whether the trial court properly denied Trackwell's motion for mistrial. A mistrial is properly granted when an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus would result in preventing a fair trial. *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547 (1993). On review, reversal of a judgment may be ordered for failure of the trial court to grant a mistrial when a proper admonition or instruction to the jury, capable of removing the damaging effect of the event, is not given. *State v. Fraser*, 230 Neb. 157, 430 N.W.2d 512 (1988). However, the decision whether to grant a motion for mistrial is within the discretion of the trial court and will be upheld on appeal absent a showing of abuse of discretion. *State v. Morrison, supra*.

"A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a

litigant of a substantial right and denying just results in matters submitted for disposition." *State v. Plant*, 236 Neb. 317, 328, 461 N.W.2d 253, 263 (1990). Accord, *State v. Riley*, 242 Neb. 887, 497 N.W.2d 23 (1993); *State v. Thomas*, 238 Neb. 4, 468 N.W.2d 607 (1991).

    U.S. Const. amend. VI and Neb. Const. art. I, § 11, guarantee an accused the right to confront witnesses. Implicit in the right of confrontation is the right to cross-examine all witnesses. *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *State v. Warford*, 223 Neb. 368, 389 N.W.2d 575 (1986). In holding that the confrontation clause is applicable to the states through U.S. Const. amend. XIV, the U.S. Supreme Court stated that "[t]here are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas*, 380 U.S. 400, 405, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

*State v. Hartmann*, 239 Neb. 300, 310, 476 N.W.2d 209, 216 (1991).

When the prosecutor became a witness in the case, corroborating the testimony of a State's witness by giving hearsay testimony, Trackwell was denied his fundamental right to confront and cross-examine witnesses against him. Because he was deprived of these substantial constitutional rights, it was an abuse of discretion for the trial court to overrule Trackwell's motion for mistrial in the absence of a proper admonition to the jury to disregard the prosecutor's remarks.

Nonetheless, not all trial errors, even of a constitutional magnitude, entitle an accused to reversal of an adverse trial result; it is only prejudicial error, that is, error which cannot be said to have been harmless beyond a reasonable doubt, which requires that a conviction be set aside. *State v. Menuey*, 239 Neb. 513, 476 N.W.2d 846 (1991).

Whether prosecutorial misconduct is prejudicial depends largely on the facts of each case. *State v. Swillie, supra*. The general rule is that remarks made by the prosecutor in final

argument which do not mislead or unduly influence the jury do not rise to a level sufficient to require granting a mistrial. *State v. Greeno*, 230 Neb. 568, 432 N.W.2d 547 (1988).

Considering the facts of this case, we are unable to conclude that the trial court's failure to grant a mistrial was harmless error. Although the evidence in this case was legally sufficient to convict Trackwell, there was also evidence which, if believed by the jury, could have resulted in his acquittal.

The importance of Malik's testimony in the conviction of Trackwell cannot be minimized. Malik was the only witness who testified for the State that Trackwell had, in effect, confessed to acts which constituted first degree sexual assault. Except for Malik's testimony, the jury's verdict hinged on whether it found the alleged victim's testimony or the defendant's testimony to be more credible.

Malik's potential bias was exposed on cross-examination when it was revealed that Malik had been engaged in difficult civil litigation with Trackwell over the repossession of Malik's vehicle. Malik's testimony that he was not trying to "get even" with Trackwell over the civil suit had been impeached by the rebuttal testimony of Trackwell's attorney in the civil action, who testified that Malik had made threats to Trackwell, which the jury could have found related to the Seward County incident.

The prosecutor's statements had the effect of enhancing Malik's credibility, which had been severely challenged. The importance to the jury of Malik's testimony is reflected by the fact that the case was submitted to the jury at 4:07 p.m., and at 5:05 p.m. the jury requested a transcribed copy of Malik's testimony. It is readily apparent that under the circumstances of this case, the prosecutor's comments did unduly influence the jury.

Accordingly, because of the extreme importance of Malik's testimony to the State's case, and because the jury obviously found his testimony to be particularly significant, we cannot say that the prosecutor's comments bolstering the credibility of this key witness constituted harmless error. It was therefore prejudicial error for the trial court to overrule Trackwell's motion for a mistrial. Trackwell is entitled to a new trial on that basis.

## CALLING COUNTY ATTORNEY TO IMPEACH OTHER WITNESSES

Trackwell also complains that he was not permitted to put the county attorney on the witness stand to testify to prior inconsistent statements made by the alleged victim and her 16-year-old female companion about their conduct while sitting in the car at Trackwell's office earlier in the evening.

Both the alleged victim and the 16-year-old female had testified on cross-examination that they had talked only to members of their own party that evening. Each specifically denied talking to anyone else.

A man who worked at a business next to Trackwell's testified for the defense that he and two other people arrived in the parking lot while Trackwell was talking with another man. The witness testified that when he got out of his car he heard "some whistling and stuff like that." He testified that there were two female voices "screaming and hollering" and that somebody said, "[N]ice ass."

The witness further testified that when he discussed his testimony with the county attorney, she told him that "we've already talked to her and she's already admitted to that." After the witness was excused, Trackwell attempted to call the county attorney as a witness "to see if there is a prior inconsistent statement which would impeach either [the alleged victim] or [her companion]." The court overruled the request.

Trackwell argues in his reply brief that he was entitled to call the county attorney to impeach the alleged victim and her companion because "[i]f [the alleged victim] sexually heckles men she does not know and lies about it, the jury should have known this. If she could lie about her flirtatious conduct while waiting for Appellant and [her male companion], she could have also lied about her conduct later that evening." Reply brief for appellant at 7-8.

Neb. Evid. R. 608(2), Neb. Rev. Stat. § 27-608(2) (Reissue 1989), provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in section 27-609, may not be proved by extrinsic evidence. They may,

however, in the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness (a) concerning his character for truthfulness or untruthfulness . . . .

Therefore, it was impermissible for Trackwell to attack the credibility of the alleged victim and her female companion by presenting extrinsic evidence of their behavior through the testimony of the county attorney. Trackwell had the opportunity to attack the credibility of each of these witnesses through cross-examination. The trial court correctly denied Trackwell's request to call the county attorney as a witness.

### JURY INSTRUCTION ON INTENT

Next, Trackwell contends that the trial court erred in failing to instruct the jury on intent as an element of first degree sexual assault.

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Lowe, ante* p. 173, 505 N.W.2d 662 (1993).

Neb. Rev. Stat. § 28-319(1) (Reissue 1989) states that "[a]ny person who subjects another person to sexual penetration and (a) overcomes the victim by force, threat of force, express or implied, coercion, or deception . . . is guilty of sexual assault in the first degree."

For the jury to find Trackwell guilty of first degree sexual assault, it was only necessary for it to find beyond a reasonable doubt that he (1) subjected the alleged victim to sexual penetration and (2) overcame the alleged victim by force, threat of force, express or implied, coercion, or deception. Intent is not an element of first degree sexual assault as defined by the statute. Trackwell's proposed jury instruction on the element of intent is not a correct statement of the law, and this assignment of error is without merit.

### SUFFICIENCY OF EVIDENCE

Trackwell also maintains that the evidence is insufficient to convict him of first degree sexual assault. It is undisputed that Trackwell subjected the alleged victim to sexual penetration. He admitted to having sexual intercourse with the alleged victim.

The only controverted issue before the jury was whether Trackwell overcame the alleged victim by force, threat of force, express or implied, coercion, or deception when he had intercourse with her. Taking the view most favorable to the State, the jury could have found beyond a reasonable doubt that Trackwell overcame his alleged victim by force, and therefore the evidence against Trackwell was legally sufficient to support his conviction for first degree sexual assault.

### EXCESSIVE SENTENCE

As we have already found reversible error requiring a new trial, it is not necessary for us to consider Trackwell's assigned error that his sentence is excessive.

### CONCLUSION

We reverse Trackwell's judgment of conviction and remand the cause to the district court for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

HASTINGS, C.J., and WHITE, J., concur.