STATE OF NEBRASKA, APPELLEE, V. LEONARDO MARTINEZ, APPELLANT.

541 N.W.2d 406

Filed December 5, 1995. No. A-95-019.

Jon Placke, of Box Butte County Public Defender's Office, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

SIEVERS, Chief Judge, and MUES and INBODY, Judges.

SIEVERS, Chief Judge.

Leonardo Martinez was charged by information with two counts of first degree sexual assault, in violation of Neb. Rev. Stat. § 28–319 (Cum. Supp. 1994), and one count of sexual

assault of a child, in violation of Neb. Rev. Stat. § 28–320.01 (Cum. Supp. 1994). After a jury trial, Martinez was convicted of one count of first degree sexual assault. The two other counts mentioned above were not submitted to the jury. Martinez was sentenced to a term of imprisonment of not less than 15 nor more than 25 years, with credit given for 167 days already served. Martinez appeals his conviction and sentence to this court. For the reasons cited below, we affirm.

## FACTS

The victim's mother, Tracy P., testified that her son Matthew P. was 8 years old and in the second grade at the time of trial. Tracy had known the defendant, Leonardo "Leo" Martinez, for the last 10 years. Martinez, age 58 at the time of trial, lived with Juanita Garcia, Matthew's babysitter. Garcia babysat for Matthew from July 1991 to August 1993 while Tracy worked and when Tracy went bowling. Matthew lived with Garcia from July 14 to August 12, 1991, when Tracy was in Hastings for inpatient treatment. Matthew was 5 years old at that time.

In June 1994, Tracy was informed by her babysitter at that time, Leslie War Bonnett, that Matthew had been kissing War Bonnett's son. Leslie and her husband, Jim War Bonnett, told Tracy that Matthew had "told them about other events that had happened, sexual events." Since Tracy suspected that her son had been sexually molested, she contacted the Hemingford Police Department on June 18. After she spoke with Hemingford police officers, it was suggested that Tracy take her son to be interviewed by Sgt. Rae Ann Christensen of the Alliance Police Department. Christensen was suggested because of her experience and specialized training in child abuse cases.

Christensen testified that she interviewed Matthew on June 24, 1994, at the request of the Hemingford Police Department. As an investigative technique, Christensen had Matthew identify different parts of the body on a picture of a male child "because a lot of times children will use different terminology than what adults do so that when I get to asking the questions about what happened I know what he's talking about." Matthew identified a penis as being a "pee–pee." Matthew was then asked to mark the parts of the body where Martinez had touched him. The

picture introduced into evidence indicates that Matthew marked the mouth, hand, buttocks, and groin area of the picture. Matthew also told Christensen that Martinez had made Matthew touch and suck Martinez' "pee–pee."

On cross–examination, Christensen was asked whether Matthew had talked about sexual actions he had taken with three other children. Christensen indicated that Matthew described sexual acts he had with these children. However, Christensen also testified that in her experience, it was not uncommon for children who have had sexual experience with adults to act out those experiences with other children. An audiotape of Christensen's interview with Matthew was received as evidence at trial. In that interview, Matthew indicated that the first time that Martinez hurt him was while Matthew was staying with Martinez and Garcia the month his mother was gone to Hastings "to stop drinking."

Matthew was allowed to testify by videotaped deposition pursuant to Neb. Rev. Stat. § 29–1926 (Reissue 1989). Matthew stated that he was 8 years old and in the second grade. After demonstrating that he knew the difference between telling the truth and telling a lie, Matthew testified that Martinez lived with Garcia. Matthew stated that Martinez had "stuck [his] private part up my butt" and that Martinez had hurt him more than once. The assaults took place behind the car in the garage at Garcia's house. Matthew stated that he told Martinez to stop it but he would not and that Martinez had told him not to tell anyone. At the time of the assaults, Martinez told Matthew to pull his pants down, but when he would not, Martinez pulled them down himself. When asked how many times Martinez did this to him, Matthew responded, "I can't remember." However, Matthew later stated that he was in kindergarten the first time that Martinez did this to him.

Dr. John Ruffing, Jr., a physician and surgeon practicing in Hemingford, Nebraska, testified that he examined Matthew on June 23, 1994, and gave him a complete physical examination, including a rectal examination. Ruffing stated that the purpose of the examination was to determine whether there was evidence of possible abuse. After performing the rectal examination, Ruffing found that the muscle tone of Matthew's buttocks was

greater than the muscle tone of the rectal sphincter. Ruffing found this to be somewhat unusual. Ruffing also found that Matthew had some incontinence of the rectal sphincter, which is unusual in a child of Matthew's age. Ruffing explained that it was unusual for a child to develop incontinence after the child had been continent for a period of time. No bleeding or abnormalities were noted within the rectum.

In the late summer of 1991, after she returned from inpatient treatment at Hastings, Tracy noticed for the first time that her son was having problems with fecal incontinence. Tracy did not take Matthew to the doctor at that time because she felt that it was her fault and that she had not taught Matthew proper hygiene.

Martinez testified through an interpreter in his own defense at trial and denied ever sexually assaulting Matthew. Martinez' motion for a directed verdict was sustained as to the second and third counts of the information. Martinez was found guilty by the jury of one count of first degree sexual assault.

## ASSIGNMENTS OF ERROR

In his appeal to this court, Martinez assigns the following errors: (1) "The district court erred in giving a jury instruction that allowed the State to prove the first element of First Degree Sexual Assault happened in a time period from July 1, 1991 to September 1, 1993," (2) the district court erred in denying Martinez his constitutional right to confront witnesses, (3) the district court erred in denying Martinez his constitutional right to compulsory process, and (4) the district court erred by imposing an excessive sentence.

## STANDARD OF REVIEW

A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict. Moreover, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *State v. Brunzo*, 248 Neb. 176, 532 N.W.2d 296 (1995). An appellate court is obligated to

reach conclusions independent of the trial court on questions of law. See *State v. Cox*, 247 Neb. 729, 529 N.W.2d 795 (1995).

## ANALYSIS

*Sufficiency of Information.*

Martinez' first assignment of error is that "[t]he district court erred in giving a jury instruction that allowed the State to prove the first element of First Degree Sexual Assault happened in a time period from July 1, 1991 to September 1, 1993." The jury was instructed that the elements of the offense included that "[o]n or about July 1, 1991, to September 1, 1993, in Box Butte County, Nebraska, Martinez did subject Matthew [P.] to sexual penetration by placing any part of his body into Matthew [P.'s] anal opening." Martinez argues that from the record "it is indistinguishable on which occasion of alleged criminal conduct Martinez was convicted." Brief for appellant at 5.

Martinez' assignment of error attacks the sufficiency of the jury instruction which defined the timeframe of the crime, but the argument in Martinez' brief under this assignment is that the information was insufficient to bar a future prosecution for the same criminal conduct. The information had charged that the first degree sexual assault had occurred "between July 1, 1991 and June 18, 1994." However, the trial court limited the timeframe in the instructions to the period when the victim was being babysat at the house where Martinez also resided: July 1, 1991, to September 1, 1993. We address the argument advanced by Martinez, and consequently our focus is on the information.

An information which alleges the commission of a crime using the language of the statute which defines that crime is generally sufficient. *State v. Bowen*, 244 Neb. 204, 505 N.W.2d 682 (1993). Moreover, an information must apprise a defendant with reasonable certainty of the charge against him so that he may prepare a defense to the prosecution and be able to plead the judgment of conviction as a bar to a later prosecution for the same offense. *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989); *State v. Piskorski*, 218 Neb. 543, 357 N.W.2d 206 (1984). These requirements are imposed by the U.S. Constitution. See, *State v. Harig*, 192 Neb. 49, 218 N.W.2d 884 (1974); *Bartell v. United States*, 227 U.S. 427,

431, 33 S. Ct. 383, 57 L. Ed. 583 (1913) (holding that it is elementary that an indictment, under the U.S. Constitution, "shall advise the accused of the nature and cause of the accusation against him in order that he may meet the accusation and prepare for his trial and that, after judgment, he may be able to plead the record and judgment in bar of further prosecution for the same offense"). This has long been the law in Nebraska, and we shall hereinafter refer to this as the "*Bartell* rule." See *Cowan v. State*, 140 Neb. 837, 2 N.W.2d 111 (1942).

Initially, we note that Martinez pled not guilty to the information. He did not move to quash the information as provided for in Neb. Rev. Stat. § 29–1808 (Reissue 1989), nor did he otherwise attack the sufficiency of the information until this appeal. The Nebraska Supreme Court has held that when an information or complaint is questioned for the first time on appeal, it must be held sufficient unless it is so defective that by no construction can it be said to charge the offense of which the accused was convicted. *State v. Laymon*, 239 Neb. 80, 474 N.W.2d 458 (1991). A defect in the manner of charging an offense is waived if, upon being arraigned, the defendant pleads not guilty and proceeds to trial, provided the information or complaint contains no jurisdictional defect and is sufficient to charge an offense under the law. *Id.* However, the constitutional requirements of the *Bartell* rule were not waived by Martinez when he proceeded to trial, because the sufficiency of the information for double jeopardy purposes may require reference to the record, which obviously does not exist at the time of arraignment, as well as reference to facts outside the record, which is permissible, see *State v. Piskorski, supra,* and any second prosecution is obviously a future event. The information here does not have any jurisdictional defects and charges the offense in the language of the statute, and Martinez does not argue that he was unable to prepare his defense. Therefore, under Martinez' first assignment of error, our consideration is limited to that portion of the *Bartell* rule which focuses on whether Martinez is able to plead the conviction rendered on this information as a bar to a later prosecution for the same offense.

Martinez argues that *State v. Quick*, 1 Neb. App. 756, 511 N.W.2d 168 (1993), requires that this conviction must be reversed because it fails to protect him from future prosecution in violation of the Double Jeopardy Clause. Therefore, we summarize *Quick*. The charging information in *Quick* alleged sexual assault by a father upon his 15–year–old mentally retarded daughter within a 2–week timeframe, but at trial the State sought to amend the information to expand the time period in the information to nearly a year. The amendment was allowed, and upon the State's evidence that the daughter was sexually assaulted four times during that year, Quick was convicted of one sexual assault. In *Quick*, the victim's testimony was that prior to each instance of sexual assault, her father would fake a heart attack and instruct his wife to leave the house to summon the rescue unit. But, during the timeframe alleged in the amended information, the rescue unit had only made two calls to the victim's residence. On appeal, the court found that the conviction could not stand because even by reference to the record, one could not determine which of the four assaults had resulted in the conviction. The court cast the question in the context that if Quick were charged again, "how can [the court] determine which occasion of alleged criminal conduct was the one for which Quick was convicted? More important, how can Quick make that same determination if he is prosecuted again for sexual assault of the victim?" *Id.* at 766, 511 N.W.2d at 173. The court found that there were no facts, either within or outside the record, which Quick could use to prove which of the four assaults he had been convicted of, if he were ever charged again. The court wrapped the matter up by observing: "[T]here are not enough ambulance trips to go around." *Id.* The court in *Quick* held:

> Therefore, relying on *Piskorski*, we apply to the facts before us the following proposition of law: When a conviction could be based on any of two or more occasions of indistinguishable criminal conduct alleged at trial, the record must clearly indicate which occasion of criminal conduct supports the conviction in order for the judgment to serve as a bar to future prosecution.

1 Neb. App. at 765, 511 N.W.2d at 172.

We do not believe that *State v. Piskorski*, 218 Neb. 543, 357 N.W.2d 206 (1984), supports the above proposition which our respected colleagues set forth in *State v. Quick, supra*. The trial court in *Piskorski* by express instruction limited the jury's consideration to one incident of sexual assault, testified to by both the victim and her mother, which had occurred in the presence of the mother. Thus, Piskorski was going to be convicted for one specific identifiable act, or not at all, and there was only one such act identified in the evidence. *Quick* presented a dramatically different case—four sexual assaults testified to, but only one criminal count charged. The decided cases typically analyze such situations to see whether the information is impermissibly duplicitous.

In *State v. Saraceno*, 15 Conn. App. 222, 228-29, 545 A.2d 1116, 1120-21 (1988), the court considered duplicitous informations:

> It is now generally recognized that "[a] single count is not duplicitous merely because it contains several allegations that could have been stated as separate offenses. See *Cohen v. United States,* 378 F.2d 751 (9th Cir.), cert. denied, 389 U.S. 897, 88 S. Ct. 217, 19 L. Ed. 2d 215 (1967). Rather, such a count is only duplicitous where the policy considerations underlying the doctrine are implicated. See *United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir. 1981), cert. denied, 461 U.S. 913, 103 S. Ct. 1891, 77 L. Ed. 2d 282 (1983)." *United States v. Sugar,* 606 F. Supp. 1134, 1146 (S.D.N.Y. 1985); see also *United States v. O'Neill,* 463 F. Sup. 1200, 1202-1204 (E.D. Pa. 1979), and cases cited therein. "These [considerations] include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution. [*United States v. Murray,* 618 F.2d 892, 896 (2d Cir. 1980)]." *United States v. Margiotta, supra.*

In *Piskorski*, the defendant was charged by an amended information with one count of first degree sexual assault on a child. The information, amended at the close of the State's case to conform to the evidence, alleged that the crime had occurred on or after September 1 and before December 25, 1982. Piskorski argued that the State offered proof of several potentially criminal acts, and as a result, the amended information was insufficient because Piskorski had "no way of knowing which specific act was involved in this conviction and which one is now barred." *State v. Piskorski*, 218 Neb. at 548, 357 N.W.2d at 210. On appeal, the Nebraska Supreme Court rejected Piskorski's argument, observing that the jury's consideration of the charge was limited by the court's instructions to one specific event testified to by both the child victim and her mother and that the jury was also told that it could not consider other acts testified to solely by the child. The court said:

> When one reviews the information, the instructions to the jury, and the record in this case, one can be left with no doubt that the act charged, and upon which Piskorski was convicted, was a specific act involving assault on the young child while the mother was present. The record makes it clear that only one such event occurred while the mother was present, although other violations, not charged in this information, may have occurred. Therefore, it would not be difficult to establish which act was involved that resulted in the conviction and is a bar to a subsequent prosecution for the same offense.

*Id.* at 549, 357 N.W.2d at 211.

Therefore, *Piskorski* is a "one count—one act" case, and thus it is not a "duplicitous information" case as was discussed in *State v. Saraceno*, 15 Conn. App. 222, 545 A.2d 1116 (1988). Accordingly, we do not believe that *Piskorski* could properly be used as a "springboard" for the broad proposition of law laid down by the court in *State v. Quick*, 1 Neb. App. 756, 511 N.W.2d 168 (1993).

The case at hand is factually closer to *Piskorski* than to *Quick*. Here, Matthew testified that Martinez assaulted him more than once, but never specified how many times. He did,

however, testify that it first happened in the babysitter's garage while he was in kindergarten, and his statement to the investigating officer (received in evidence) was that the first time was while his mother was receiving treatment "to stop drinking." Thus, although the record contains evidence of more than one assault, there is only one count charged, and there is evidence which defines with reasonable certainty the time and place of at least one assault—the first one—while the mother was away in treatment. Accordingly, the instant case is not an allegedly duplicitous information case such as *Saraceno*, which involved a 5-year history of sexual assault and abuse of a girl who was 10 years old when she reported the crimes. *Saraceno* involved 11 separate counts against the defendant which encompassed various parts of a 3-year timespan. Even then, the Connecticut court turned back the challenge to the information on grounds that it was duplicitous, on notice grounds, and finally on the ground that the trial court should have granted a further bill of particulars:

> We also recognize, however, that in a case involving the sexual abuse of a very young child, that child's capacity to recall specifics, and the state's concomitant ability to provide exactitude in an information, are very limited. The state can only provide what it has. This court will not impose a degree of certitude as to date, time and place that will render prosecutions of those who sexually abuse children impossible. To do so would have us establish, by judicial fiat, a class of crimes committable with impunity.
>
> We conclude, as have other jurisdictions considering the issue, that as long as the information provides a time frame which has a distinct beginning and an equally clear end, within which the crimes are alleged to have been committed, it is sufficiently definite to satisfy the requirements of the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. See, e.g., *United States* v. *Roman,* 728 F.2d 846, 851 (7th Cir.), cert. denied, 466 U.S. 977, 104 S. Ct. 2360, 80 L. Ed. 2d 832 (1984) (crimes committed over eleven year period); *United States* v. *McCown,* 711 F.2d 1441, 1450 (9th Cir. 1983) (crimes committed over five

month period); *People v. Baugh,* 145 Ill. App. 3d 133, 495 N.E.2d 688 (1986) (crimes committed over nine month period).

*State v. Saraceno,* 15 Conn. App. at 237, 545 A.2d at 1124.

■ The Iowa Supreme Court stated in *State v. Rankin,* 181 N.W.2d 169, 172 (Iowa 1970), that some liberality must be permitted concerning the date of a sexual assault when the person victimized is too young to testify clearly "as to the time and details of such shocking activity." Consistent with constitutional limitations, the extreme youth of a victim who has been victimized more than once should not become the basis of preventing a conviction for sexual assault on a child.

We are aware that the court in *State v. Quick, supra,* rejected the solution of a "blanket bar to future prosecution" of Quick for any of the four alleged incidents of sexual assault which may have occurred between April 25, 1987, and April 9, 1988, the timeframe of the amended information. 1 Neb. App. at 766, 511 N.W.2d at 173. The trial judge, in ruling on the State's proposal to amend the information, had ruled that if the amendment were allowed, " 'then *any act* that occurred during that period would be barred by the verdict of this jury.' " (Emphasis in *Quick.*) *Id.* at 765, 511 N.W.2d at 173. The court in *Quick* said that the trial judge cited no authority for its assertion of the "blanket bar" of further prosecution for the timeframe of the amended information against Quick. We conclude that a "blanket bar" to future prosecution cannot always be rejected and that the concept has ample support in decided cases, and therefore we respectfully disagree with our colleagues who decided *Quick.* We reach this conclusion recognizing that the issue under consideration typically arises only in cases of sexual assault of young children who cannot particularize dates. However, without some sort of "blanket bar," convictions in cases of multiple offenses against young children would be most difficult to sustain in the face of a double jeopardy challenge when there are multiple assaults over a lengthy timeframe upon a young and frightened child.

■ In *State v. Fawcett,* 145 Wis. 2d 244, 247, 426 N.W.2d 91, 93 (Wis. App. 1988), the Wisconsin Court of Appeals dealt with whether a conviction on two counts barred further

prosecution in a sexual assault case involving a 10-year-old child, which offenses were alleged to have occurred " 'during the six months preceding December A.D. 1985.' " The Wisconsin Court of Appeals noted that the Wisconsin Supreme Court had adopted what we have called the *Bartell* rule, but the rule was characterized as merely extremely broad language which arguably does nothing more than state the constitutional right to notice and protection against double jeopardy. When considering the two prongs of the *Bartell* rule: (1) notice of the charges and (2) whether the charging document violated the defendant's double jeopardy protections, the Wisconsin Court of Appeals found the "reasonableness test" of *People v Morris*, 61 N.Y.2d 290, 461 N.E.2d 1256, 473 N.Y.S.2d 769 (1984), to be helpful. In *Morris*, the high court of New York said that reasonable certainty is required in criminal pleading but that the lack of a precise date is not a fatal defect if it is not a substantive element of the crime. In Nebraska, a precise date generally is not an element of sexual assault, and charging the commission of first degree sexual assault within the statute of limitations is sufficient. *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989). See, also, *State v. Rankin*, 181 N.W.2d 169 (Iowa 1970). *Morris* sets forth a number of factors used in the analysis of a charging information, including "the ability of the victim or complaining witness to particularize the date and time of the alleged transaction." 61 N.Y.2d at 296, 461 N.E.2d at 1260, 473 N.Y.S.2d at 773.

In *State v. Fawcett, supra*, the court listed the factors used by courts in applying the "reasonableness test": (1) the age and intelligence of the victim and other witnesses; (2) the surrounding circumstances; (3) the nature of the offense, including whether it is likely to be discovered immediately; (4) the length of the time period at issue compared to the number of criminal acts alleged; (5) the passage of time between the alleged period of time and the defendant's arrest; (6) the length of time between the offense and when charges are brought; and (7) the ability of the victim to particularize the date and time of the offense.

These factors, together with the unique nature of sexual crimes against children, are important in judging whether the

constitutional protection against double jeopardy is offended when the best that can be done is to charge the crime within a period of time, rather than to a specific date. In cases of sexual crimes against children, a young child lacks the ability to particularize dates as adults do, there usually are neither eyewitnesses nor reliable trace evidence, and delayed reporting is often the norm. This court touched on some of these matters in its discussion of child sexual abuse accommodation syndrome in *State v. Doan*, 1 Neb. App. 484, 498 N.W.2d 804 (1993).

When only one sexual assault within the charging period is determinable as having occurred during that period by linkage to another event, which then furnishes a reasonably definite time for an offense, the requirement of the Double Jeopardy Clause that the defendant be able to plead the conviction as a bar to further prosecution is satisfied when used in conjunction with a "blanket bar" for the time period in the charging information. In *State v. Piskorski*, 218 Neb. 543, 357 N.W.2d 206 (1984), the assault that happened when the mother was present was the only one for which a conviction could have occurred, and thus it was sufficient to provide the defendant with the certainty needed for double jeopardy purposes. Here, the first assault occurred during the month while the victim's mother was gone "to stop drinking" and while the victim was in kindergarten. Thus, similarly to Piskorski, Martinez could establish, if need be in the event of future prosecution, that the first assault was the occasion for which Martinez was convicted. He would do so by reference to the record that the first assault occurred while the child's mother was undergoing inpatient treatment. Nonetheless, the bar to future prosecutions must of necessity extend to the entire time period in the information— July 1, 1991, through June 18, 1994.

In reaching this conclusion, we reject the prohibition against a "blanket bar" from *State v. Quick*, 1 Neb. App. 756, 511 N.W.2d 168 (1993), and find the reasoning of other courts more on point. The Wisconsin court in *State v. Fawcett*, 145 Wis. 2d 244, 426 N.W.2d 91 (Wis. App. 1988), held that courts may tailor double jeopardy protection to reflect the time period involved in the charge in the earlier prosecution. The *Fawcett* court said:

> Therefore, Fawcett's double jeopardy protection can also be addressed in any future prosecution growing out of this incident. If the state is to enjoy a more flexible due process analysis in a child victim/witness case [in pleading the charge in the information], it should also endure a rigid double jeopardy analysis if a later prosecution based upon the same transaction during the same time frame is charged. *See State v. St. Clair*, 418 A.2d 184, 189 (Me. 1980).

145 Wis. 2d at 255, 426 N.W.2d at 96.

Our analysis here is not aimed at whether Martinez sexually assaulted Matthew. The jury has determined that he did, and the sufficiency of the evidence to uphold that conviction is not challenged. Instead, our analysis goes to whether this conviction must be reversed because the charging information was not definite and certain enough to enable Martinez to use this conviction as a bar in the event of future prosecution. We cannot help but observe that this is a speculative exercise, since there is no further prosecution disclosed by this record. Nonetheless, if future prosecution of Martinez for sexual crimes against Matthew is undertaken by the State, Martinez will be able to plead that further prosecution based on a sexual assault of Matthew between July 1, 1991, and June 18, 1994, the timeframe of the information, is barred by the Double Jeopardy Clause of the U.S. Constitution.

As said in *State v. Chambers*, 173 Wis. 2d 237, 253, 496 N.W.2d 191, 197 (Wis. App. 1992), a court "may tailor double jeopardy protection by tracking the time period of an earlier prosecution." See, also, *State v. Altgilbers*, 109 N.M. 453, 468, 786 P.2d 680, 695 (N.M. App. 1989) (extending "blanket bar" to future prosecution of defendant for "any sexual offenses involving his two children during the time encompassed by the counts in the indictment"), citing *State v. Rudd*, 759 S.W.2d 625 (Mo. App. 1988). *Altgilbers* contains a comprehensive discussion of the problems presented when framing charges involving child victims who cannot particularize dates with the result that considerable discretionary latitude is extended to prosecutors. The corollary thereof must be the extension to the defendant of a "blanket bar" to future prosecution for the time period specified in the first charge.

Recognition of the concept of a "blanket bar" accords Martinez broad protection under constitutional double jeopardy requirements in the event of future prosecutions. In doing so, the State is held to the expansive time period which it specified in the information. In so concluding, we recognize the difficulties inherent in child sexual abuse prosecutions with young victims who cannot particularize dates. When there are multiple assaults, the inability to define a date often becomes even more pronounced. We balance such difficulties against the defendant's constitutional right to be free from double jeopardy as a result of future prosecutions. See *State v. Rankin*, 181 N.W.2d 169 (Iowa 1970), and *State v. Healy*, 136 Minn. 264, 161 N.W. 590 (1917) (holding that conviction or acquittal of offense occurring within designated time period will bar subsequent prosecutions on same charge for acts occurring within designated time period). To the extent that *State v. Quick, supra*, can be considered factually similar to the case at hand, we reject, with due respect to our colleagues, its reasoning and hold it inapplicable. Accordingly, we reject Martinez' first assignment of error, that his conviction should be reversed because this conviction is based upon an information which fails to accord him protection for future prosecutions under the Double Jeopardy Clause.

*Martinez' Right to Confrontation of Victim.*

Martinez also argues that the court denied him his right to confrontation by limiting his cross-examination of the victim. Specifically, Martinez asserts he was denied the right to confront the victim during the victim's deposition which was used in court in place of the victim's live testimony. The victim, 8 years old at the time of trial, was allowed to testify by videotaped deposition pursuant to Neb. Rev. Stat. § 29-1926 (Reissue 1989). Our review of the record reveals that Martinez has waived any error with regard to confrontation of this witness, since he did not object to the introduction of the videotaped deposition at trial. It is fundamental that a party who fails to make a timely objection to evidence waives the right on appeal to assert prejudicial error concerning the evidence received without objection. *State v. Williams*, 247 Neb. 878,

530 N.W.2d 904 (1995); *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994). Since Martinez has waived appellate review on this issue, we consider this assignment no further.

*Denial of Right to Compulsory Process.*

Martinez next argues that he was denied his right to compulsory process when the trial court refused to allow him to depose and call as witnesses at trial the three children the victim claimed to have had sexual relations with. Martinez argues that these witnesses would have denied sexual contact with the victim. Martinez then asserts that this testimony would serve to impeach the victim's statements made to Christensen and would put the victim's credibility into question. The trial court denied Martinez' motion to depose these witnesses and also sustained the State's motion in limine preventing the testimony of these three children at trial. The trial court reasoned that the evidence was not relevant to the issues in the case and was an improper collateral attack upon the victim's testimony. The issue presented is the extent to which a defendant can introduce evidence of collateral matters in order to attack the victim's credibility. We note that Martinez does not assign as error the sustaining of the motion in limine which prevented him from making inquiry of Matthew about such matters on cross-examination during the videotaped deposition.

A trial court has the discretion to order depositions in criminal cases if the information may affect the outcome of the trial. Neb. Rev. Stat. § 29-1917 (Cum. Supp. 1994). See, also, *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992), where the appellant contended he should have been allowed to depose the sexual assault victim's grade school principal about an incident involving a missing watch and the victim's untruthfulness regarding the disappearance of the watch. The Nebraska Supreme Court upheld the trial court's rejection of the discovery plan, stating: "This line of discovery not only is clearly collateral to the criminal behavior at hand, but does nothing to exculpate the appellant." *Id.* at 38, 486 N.W.2d at 203. See, also, *State v. Tuttle*, 238 Neb. 827, 472 N.W.2d 712 (1991) (holding that unless discovery is granted as a matter of statute, court rule, or the Constitution, discovery is within the

discretion of the trial court, whose ruling will be upheld on appeal absent an abuse of discretion). In order to conclude that the district court abused its discretion in denying discovery, we would have to be able to say that the evidence from the three children would have been admissible.

In the present case, the discovery sought by the defense with regard to Matthew's purported sexual relations with other children is collateral to the allegations against Martinez. We understand the argument Martinez wanted to make at trial to be that if Matthew lied about his sexual activity with the three children, then he also lied about Martinez' having sexually assaulted him.

■ Neb. Evid. R. 608(2), Neb. Rev. Stat. § 27-608(2) (Reissue 1989), provides that

[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in section 27-609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness : . . . .

Obviously, Martinez' use of the three children as witnesses was solely for the purpose of attacking Matthew's credibility and would be prohibited extrinsic evidence under rule 608(2).

This section was applied in *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994), a case factually analogous to the situation in the case at bar. Trackwell was on trial for first degree sexual assault and wanted to use the testimony of the county attorney to impeach the alleged victim and her companion because " '[i]f [the alleged victim] sexually heckles men she does not know and lies about it, the jury should have known this. If she could lie about her flirtatious conduct while waiting for Appellant and [her male companion], she could have also lied about her conduct later that evening.' " *Id.* at 934, 509 N.W.2d at 645 (quoting from Trackwell's reply brief). The Nebraska Supreme Court, citing rule 608(2), held that it was impermissible for Trackwell to attack the credibility of the alleged victim and her companion by presenting extrinsic evidence of their behavior through the testimony of the county

attorney. Trackwell's opportunity to attack the credibility of each of these witnesses was said to be through cross-examination. The court held that the trial court had correctly denied Trackwell's request to call the county attorney as a witness to testify about the victim's untruthfulness. In the present case, although Martinez may have been able, within the discretion of the court under rule 608(2), to inquire into such incidents with the three children on cross-examination of Matthew during the videotaped deposition, it is clear that it would have been impermissible to bring the three child witnesses into the courtroom to testify.

In *State v. Williams*, 219 Neb. 587, 365 N.W.2d 414 (1985), the court set forth a test to determine whether a fact inquired into on cross-examination in criminal proceedings is collateral, i.e., Would the cross-examining party be entitled to prove it as part of the case tending to establish his plea? Whether Matthew engaged in conduct of a sexual nature with three other children is not in any way exculpatory with respect to the allegation that Matthew was forcibly sexually assaulted by Martinez. In fact, there was evidence in the record that sexual "acting out" by child sexual abuse victims is common. Thus, if anything, the evidence could be seen as inculpatory. The trial court did not err in denying Martinez the opportunity to call these three children as witnesses as alleged in the assignment of error.

*Excessive Sentence.*

Finally, Martinez argues that the sentence imposed against him was excessive when compared to the sentences received by two other individuals. The problem with this argument is that the record here does not reveal that these two individuals were convicted and sentenced for assaulting Matthew. Martinez was sentenced to 15 to 25 years' imprisonment for his conviction of first degree sexual assault. A sentence within statutory limits will not be disturbed upon appeal absent an abuse of discretion, meaning that the trial court's ruling is clearly untenable and unfairly deprives the defendant of a substantial right and a just result. *State v. Philipps*, 242 Neb. 894, 496 N.W.2d 874 (1993); *State v. Riley*, 242 Neb. 887, 497 N.W.2d 23 (1993). Martinez' sentence is harsh, but the crime is particularly

reprehensible. The sentence is well within the statutory limits defined by the Legislature for this crime. We find no abuse of discretion in the sentence imposed.

## CONCLUSION

The conviction and sentence are affirmed in all respects.

AFFIRMED.