STATE OF NEBRASKA, APPELLANT, V. CHARLES WILLIS, APPELLEE.
394 N.W.2d 648

Filed October 10, 1986.   No. 86-015.

George Rhodes, Custer County Attorney, for appellant.

Carlos E. Schaper and Gregory S. Anderson, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

HASTINGS, J.

This is a proceeding by the State under the provisions of Neb. Rev. Stat. § 29-2315.01 (Reissue 1985). It seeks to review the ruling by the district court for Custer County, Nebraska, sustaining the defendant's plea in abatement. We sustain the exception.

The defendant, Charles Willis, was charged with first degree sexual assault of Diana Willis. Defendant filed a plea in

abatement. At the conclusion of the hearing the district court ruled that at common law a husband could not be found guilty of raping his wife and that the common law applied in Nebraska. Because Charles Willis was the victim's legal spouse at the time of the alleged sexual assault, the court quashed the information and abated the prosecution.

The State urges two assignments of error: (1) That the district court erred in finding that an information for first degree sexual assault fails to state a cause of action when the victim is the wife of the defendant; and (2) That the district court's ruling unconstitutionally deprives spouses of equal protection of the law and places wives in a condition of involuntary servitude. Because of our ruling on the first assignment of error, we need not address the second.

The defendant claims that at common law a husband could not be found guilty of raping his wife. Defendant also claims that this common-law rule was adopted by this court in *Hanks v. State*, 88 Neb. 464, 129 N.W. 1011 (1911), *sentence modified* 89 Neb. 203, 130 N.W. 1037, and reiterated in *Jump v. State*, 146 Neb. 501, 20 N.W.2d 375 (1945), and *State v. Holloman*, 197 Neb. 139, 248 N.W.2d 15 (1976).

When each of those cases was decided, the Nebraska rape statutes were substantially different than the sexual assault statutes are today. Under the former law, rape was divided into two categories. One type of rape was the carnal knowledge of the accused's daughter or sister, forcibly and against her will. The other category of rape was the carnal knowledge of any other woman, or female child, than his daughter or sister, forcibly and against her will.

In *Hanks* this court was called upon to determine whether there was sufficient evidence to sustain the verdict of guilty to a charge of rape. After determining that there was a conflict in the evidence concerning the victim's appearance, demeanor, and statements, and concluding that such a conflict was for the jury to resolve, we added: "We are also of the opinion that there is sufficient evidence to sustain a finding that the prosecutrix is not the *wife*, sister or daughter of the accused, although no witness testified in express terms that no such relationship existed." (Emphasis supplied.) 88 Neb. at 467, 129 N.W. at

1012. Similar language was employed in *Jump* and *Holloman*, both involving charges brought under former Neb. Rev. Stat. § 28-408 (Reissue 1964 & Cum. Supp. 1969).

In each of these cases it was never the contention of the defendant that the victim of the rape was his wife. The defendants were, instead, complaining that the State had offered insufficient evidence to prove an essential element of the type of rape with which the defendant had been charged; that being rape upon a female other than the defendant's daughter or sister. Thus, the addition of the word "wife" into the statutory list of sister and daughter was gratuitous at best and does not convince this court that we ever adopted the common-law spousal exclusion to rape.

In addition, we note that the foundation for the spousal exclusion is extremely weak. The rule apparently has as its origin the following extrajudicial statement made by Lord Hale: "But the husband cannot be guilty of a rape committed by himself upon his lawful wife, for by their mutual matrimonial consent and contract the wife hath given up herself in this kind unto her husband, which she cannot retract." 1 M. Hale, The History of the Pleas of the Crown 629 (T. Dogherty ed. 1800). See *Commonwealth v. Chretien*, 383 Mass. 123, 417 N.E.2d 1203 (1981). We, however, agree with the Supreme Court of New Jersey when it stated:

> We believe that Hale's statements concerning the common law of spousal rape derived from the nature of marriage at a particular time in history. Hale stated the rule in terms of an implied matrimonial consent to intercourse which the wife could not retract. This reasoning may have been persuasive during Hale's time, when marriages were effectively permanent, ending only by death or an act of Parliament. [Citation omitted.] Since the matrimonial vow itself was not retractable, Hale may have believed that neither was the implied consent to conjugal rights. Consequently, he stated the rule in absolute terms, as if it were applicable without exception to all marriage relationships. In the years since Hale's formulation of the rule, attitudes towards the permanency of marriage have changed and divorce has become far

easier to obtain. The rule, formulated under vastly different conditions, need not prevail when those conditions have changed.

*State v. Smith*, 85 N.J. 193, 201, 426 A.2d 38, 42 (1981).

Another theory supporting the origin of the spousal exclusion is that the rule was a "derivation of the ancient definition of rape as 'unlawful' carnal knowledge of a woman by a man without her consent; intercourse between husband and wife is not unlawful; therefore, it is reasoned, neither spouse may be prosecuted for what would otherwise be rape." *Commonwealth v. Chretien, supra* at 128, 417 N.E.2d at 1207. Nebraska's former rape statutes never defined rape as the "unlawful" carnal knowledge of a woman, therefore that basis for believing the spousal exclusion was the law in Nebraska is also without merit. Accord *Warren v. State*, 255 Ga. 151, 336 S.E.2d 221 (1985).

The final theories supporting the spousal exclusion are that a wife is a chattel of her husband and that they were one person after marriage. Both of these theories no longer support the spousal exclusion. "Nowhere in the common-law world—indeed in any modern society—is a woman regarded as chattel or demeaned by denial of a separate legal identity and the dignity associated with recognition as a whole human being." *Trammel v. United States*, 445 U.S. 40, 52, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980). Indeed, Neb. Rev. Stat. §§ 42-201 et seq. (Reissue 1984) specifically grant married women the right to own and maintain separate property, contract, carry on business, and earn wages on their own account.

In light of the facts that no case has ever held that the common-law spousal exclusion is the law in Nebraska, that Nebraska's former rape statutes never defined rape as the "unlawful" carnal knowledge of a woman, and that none of the justifications for the exclusion have any merit in modern society, we decline at this time the defendant's invitation to declare that the spousal exclusion was part of Nebraska rape law.

We decline that invitation because the existence of a common-law spousal exclusion to a rape prosecution is now immaterial, as Nebraska no longer has a rape statute. The

Nebraska Legislature repealed Neb. Rev. Stat. §§ 28-407 (Reissue 1964) and 28-408 in 1975 when it adopted the first degree sexual assault statute. The sexual assault statute was slightly reworded in 1977 as part of the adoption of the new criminal code, and the pertinent portion reads as follows: "Any person who subjects another person to sexual penetration and (a) overcomes the victim by force, threat of force, express or implied, coercion, or deception . . . is guilty of sexual assault in the first degree." Neb. Rev. Stat. § 28-319(1) (Reissue 1979). The defendant was charged under § 28-319(1) (Reissue 1985).

We hold that the differences between the former rape statutes and the present first degree sexual assault statute are "more than sufficient to abrogate any 'implied consent' upon which a common-law 'interspousal exception' to prosecution may be based." *State v. Rider*, 449 So. 2d 903, 905 (Fla. App. 1984).

First, and most importantly, we note that the first degree sexual assault statute proscribes a crime of violence, not a crime of sex. First degree sexual assault is not a "sexual [act] of an ardent husband performed upon an initially apathetic wife, [it is an act] of violence that [is] accompanied with physical and mental abuse and often leave[s] the victim with physical and psychological damage that is almost always long lasting." *Warren v. State, supra* at 152, 336 S.E.2d at 222.

Second, not only is nonconsensual sexual intercourse proscribed by the first degree sexual assault statute, as was true under the former rape statutes, but also proscribed is any form of sexual penetration as set out in Neb. Rev. Stat. § 28-318(6) (Reissue 1985).

Third, under the former rape statutes, the sexual intercourse must have been forcibly obtained. Under the first degree sexual assault statute, however, the victim can be overcome in many ways short of force. Threat of force, express or implied, coercion, or deception is sufficient. § 28-319(1)(a) (Reissue 1985).

Finally, unlike rape, first degree sexual assault can be committed either by a man or a woman, and the victim can be either a man or a woman. See *State v. Country*, 194 Neb. 570, 234 N.W.2d 593 (1975). As stated in *State v. Smith*, 401 So. 2d 1126, 1129 (Fla. App. 1981):

While anatomical differences between the sexes limit the manner in which the offense of sexual battery can be perpetrated, it nonetheless follows that if there is an implied consent by a woman to such conduct by her husband there has to be an implied consent to similar conduct by the husband. In Hale's time, a man could not be a victim of rape, but under section 794,011, Florida Statutes, he can be. It is inconceivable that a husband would accept the argument that by marriage he consented to the conduct defined in the statute if inflicted upon him by force or violence.

The same reasoning applies to first degree sexual assault in Nebraska under § 28-319 (Reissue 1985). We hold that by repealing the rape statutes and enacting such a radically different first degree sexual assault statute, the Legislature intended to abrogate any common-law assumptions concerning the crime of rape.

The trial court was in error in sustaining the plea in abatement and quashing the information. The exception is sustained, and the cause is remanded for further proceedings consistent with this opinion.

EXCEPTION SUSTAINED, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.

GRANT, J., participating on briefs.