STATE OF NEBRASKA, APPELLEE, V. DAVID KOPERSKI, APPELLANT.
578 N.W. 2d 837

Filed May 15, 1998.    No. S-95-813.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and BOSLAUGH and GRANT, JJ., Retired.

GERRARD, J.

David Koperski was convicted by a jury of first degree sexual assault and sentenced by the district court to 4 years' probation and 60 days in jail. The Nebraska Court of Appeals affirmed the district court's judgment. Koperski successfully petitioned this court for further review. Finding error below, we reverse the judgment of the Court of Appeals and remand this matter with directions that it vacate the district court's judgment and remand this cause to the district court for a new trial.

## FACTS

The alleged victim in this case, K.O., and her friend and coworker Marti G., both residents of Omaha, made plans to meet in Lincoln on the afternoon of Friday, April 8, 1994. K.O. and Marti intended to spend that evening drinking and dancing at a popular Lincoln nightclub with Marti's friend, Tanja D. Marti was a close friend of the defendant, Koperski. Marti knew that Friday was Koperski's birthday and that he was having a party at the house he shared with three other young men. At around 8:30 p.m., before going to the nightclub, the three young women briefly stopped by Koperski's party, where Marti first introduced K.O. to Koperski. The women stayed at the party for about 30 minutes. Nothing remarkable occurred at this time.

Marti and K.O. had intended to spend the night at Tanja's apartment. However, during the course of the evening, the women separated when Tanja left with her boyfriend. When Marti and K.O. arrived at Tanja's apartment around 2 a.m., Tanja was not home. Marti called Koperski and asked if they could spend the night at his house. He agreed. There was an "after-hours" party going on at Koperski's when the women arrived. Both young women joined the party.

After awhile, K.O. felt ill and lay down on the couch in the living room, covered herself with a comforter, and fell asleep. Koperski noticed that K.O. was not well and checked on her at least twice during the party. It is uncontroverted that at this point, both K.O. and Koperski were under the influence of alcohol, but not so intoxicated that either was obviously impaired. It is also uncontroverted that during the course of the evening, Koperski had not made any sort of sexually suggestive remark directed at K.O. and that K.O. had not shown any sort of romantic interest in Koperski.

After the last guest left the party, Koperski checked on K.O. one last time. K.O. testified that Koperski woke her up, leaned over the back of the couch, and kissed her. K.O. stated that she kissed him back and that these kisses were French kisses. K.O. testified that as they kissed, Koperski jumped over the back of the couch and landed on top of her. Once on top, he began aggressively grinding his hips against her hips, simulating sexual intercourse. K.O. said that at this point, she stopped kissing Koperski, repeatedly told him no, and attempted to push him away.

K.O. testified that instead of stopping, Koperski got up onto his knees and, in one motion, pulled down her pants and underwear causing her pants to rip and two buttons to pop off. K.O. further testified that she tried to pull her pants back up but that Koperski pulled them back down again. K.O. said that she was unable to get up off the couch at this time because Koperski was kneeling on her pants which were around her calves.

K.O. testified that Koperski, with his penis now exposed and erect, lay back down on top of her. With Koperski back on top of her, K.O. said that she again told Koperski to stop. K.O. testified that for the next 20 minutes or so, Koperski lay on top of her begging for sex and that she never consented to sexual penetration. K.O. testified that Koperski penetrated her anyway and that she began crying. At this point, Koperski stopped, got up, and, according to K.O., said, "I'm sorry, I don't know what came over me."

On cross-examination, K.O. admitted that most of the time her arms were free, that she never cried out in a loud voice, and that Koperski never threatened her in any manner or used his

arms to hold her down. K.O. also said that when Koperski lay back down on top of her after pulling down her pants, she thought that she could push him away at any time and that he would listen to her. K.O. testified that Koperski's body weight was the only force used to overcome her. Koperski is 6 feet tall and weighs 185 pounds. K.O. is 5 feet 1 inch tall and weighs 130 pounds.

Koperski's account of the alleged attack is somewhat different. Koperski said that when he went to check on K.O. after his last guest left, he approached the couch from behind and placed his hand either on the couch or on K.O.'s shoulder and asked her if she was all right. Koperski said that K.O. sat up, took hold of his shirt, and pulled him forward, at which time they began to kiss very passionately. Koperski said that he climbed over the back of the couch and lay on top of K.O.

According to Koperski, they kissed passionately and moved their hips in unison. Koperski testified that during this time, they both removed the comforter that was between them and that he thought K.O. was attempting to pull down his pants. Koperski then got to his knees, pulled down K.O.'s pants, and then stood up and removed his pants and shoes. Koperski said that when he stood up, K.O. made no attempt to get up or leave. Koperski lay back down on K.O. When he attempted to penetrate her, Koperski testified that K.O. muttered "no" one or two times. Koperski asked K.O. if she was just teasing him. K.O. did not immediately answer.

Koperski then attempted to penetrate her again. K.O. uttered "no" four or five times in a somewhat louder, crescendo-like fashion. Koperski stopped, told K.O. he was sorry, and retrieved a glass of water for her. Koperski specifically denied begging for sex for 20 minutes or saying anything like "I don't know what came over me." Koperski testified that the entire episode, from the time they began kissing until he stopped after K.O. repeatedly told him "no," lasted 5 to 7 minutes. Koperski also testified that at the time, he did not believe he had sexually penetrated K.O., but that it was possible that he had. Koperski said he knew that K.O. was upset and attempted to talk to her, but K.O. was not responsive. Koperski retired to his bedroom.

K.O. slept the rest of the night on the couch. Koperski's roommates were all sleeping in their bedrooms, and K.O.'s friend Marti was sleeping in the basement during this incident. K.O. did not seek help or assistance from any of them. In the morning, K.O. told Marti what had happened. K.O. said Marti was unsympathetic. K.O. and Marti left Koperski's house and spent much of the rest of the day in Lincoln with Tanja. Tanja testified that K.O. was in good spirits, laughing and joking much of the time.

After returning to Omaha and talking to her estranged husband, her roommate, and her best friend, K.O. presented herself to St. Joseph Hospital and reported that she had been raped. On Sunday, the Lincoln Police Department contacted Koperski concerning K.O.'s allegation. Koperski cooperated with the police, providing a taped statement shortly after being informed of K.O.'s charge and allowing the police access to search his house while he went to work. Koperski then arranged to take the rest of the day off work so that he could cooperate further in the investigation.

At the close of the evidence, Koperski's counsel asked the trial court to instruct the jury with respect to the issue of consent. The trial court refused because, in its view, the lack of consent was not an element to be proved by the State. The court thought that allowing each side an opportunity to argue the issue of consent would be adequate. During the course of deliberations, the jury asked the court to further clarify the meaning of the word "force" and whether they could consider the issue of consent.

The case was submitted to the jury on a Friday morning. By 8:30 p.m., no verdict had been reached. Koperski had refused to waive sequestration of the jurors, so the court prepared to have the jury transported to a hotel for the night. When the bailiff contacted one juror's wife, the bailiff was informed that the juror's wife's grandmother had passed away and that they needed to fly to Florida on Saturday for her funeral. The trial judge delivered this message to the juror, who happened to be the foreman. When asked what would happen if the jury did not reach a verdict before Saturday, the trial judge responded that he would have to declare a mistrial. This exchange was over-

heard by other jurors. The jurors then asked if they could continue their deliberations.

The trial judge returned to his chambers and immediately held a telephone conference with the attorneys, informing them of his contact with the jury. Koperski's counsel agreed to contact Koperski and come immediately to the courtroom to discuss the possibility of waiving sequestration. Before Koperski and his counsel could arrive, the jury returned its verdict. Koperski did not move for a mistrial before the verdict was received, but, instead, filed a motion for a new trial after learning of the adverse result.

Koperski appealed the judgment of conviction to the Court of Appeals, assigning as error the failure of the trial court to give his proffered jury instructions concerning the issue of consent and the ex parte contact between the judge and the jury. The Court of Appeals, in a memorandum opinion filed May 30, 1996, affirmed the district court's judgment, holding that Koperski's proffered jury instruction regarding the issue of consent was not a correct statement of Nebraska law because, in reliance on *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994), wherein this court stated that intent is not an element of Neb. Rev. Stat. § 28-319 (Cum. Supp. 1994), the proffered instructions incorrectly required criminal intent on the part of Koperski. In addition, the proffered instructions defined consent in terms of K.O.'s state of mind, improperly directing the jury's attention away from Koperski's conduct of overcoming K.O.

As to Koperski's other assigned error, the Court of Appeals held that although Koperski had adequately preserved his claimed error concerning improper contact between the judge and the jury, the contact in this case was not prejudicial.

## ASSIGNMENT OF ERROR

Summarized, Koperski assigns but one error in his petition before this court—that being, the trial court's failure to instruct the jury on the issue of consent. In its brief in response, the State asserts that Koperski has thus waived the error assigned below regarding improper contact between the judge and jury. In a supplemental brief, Koperski asks us to consider all errors assigned to the Court of Appeals under our plain error doctrine.

## STANDARD OF REVIEW

On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. *State v. Howell, ante* p. 247, 575 N.W.2d 861 (1998).

## ANALYSIS

In regard to the issue of consent under § 28-319, this case presents an issue of last, or at least limited, impression. Koperski was charged under § 28-319(1)(a), which provides: "(1) Any person who subjects another person to sexual penetration and (a) overcomes the victim by force, threat of force, express or implied, coercion, or deception . . . is guilty of sexual assault in the first degree." Noticeably absent from the statutory text is the word "consent." We note that in 1995, the Legislature amended § 28-319 to provide: "(1) Any person who subjects another person to sexual penetration (a) without *consent* of the victim . . . is guilty of sexual assault in the first degree." (Emphasis supplied.) § 28-319 (Reissue 1995). Further, Neb. Rev. Stat. § 28-318 (Reissue 1995), as amended, provides:

(8) Without consent means:

(a)(i) The victim was compelled to submit due to the use of force or threat of force or coercion, or (ii) the victim expressed a lack of consent through words, or (iii) the victim expressed a lack of consent through conduct, or (iv) the consent, if any was actually given, was the result of the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor;

(b) The victim need only resist, either verbally or physically, so as to make the victim's refusal to consent genuine and real and so as to reasonably make known to the actor the victim's refusal to consent; and

(c) A victim need not resist verbally or physically where it would be useless or futile to do so; and

(9) Force or threat of force means (a) the use of physical force which overcomes the victim's resistance or (b) the threat of physical force, express or implied, against the victim or a third person that places the victim in fear of death

or in fear of serious personal injury to the victim or a third person where the victim reasonably believes that the actor has the present or future ability to execute the threat.

In the instant case, the trial court instructed the jury essentially in the language of the statute as follows:

INSTRUCTION NUMBER 4

The material elements which the state must prove by evidence beyond a reasonable doubt in order to convict the defendant of the crime charged are:

1. That the defendant, David Koperski, did intentionally subject [K.O.] to sexual penetration.

2. That the defendant did so by overcoming [K.O.] by force, threat of force, express or implied, coercion or deception.

3. That the defendant did so on or about April 9, 1994, in Lancaster County, Nebraska.

In instruction No. 7, the trial court defined the terms "intentionally," "actor," "sexual penetration," "victim," and "coercion."

Koperski's theory at trial was that he reasonably believed that K.O. had consented to sexual penetration and that he did not use force to overcome K.O. beyond that force normally employed when two consenting adults engage in sexual intercourse. To this end, Koperski tendered the following instructions:

PROPOSED INSTRUCTION NO. 1;

In the crime of first degree sexual assault, criminal intent must exist at the time of the first degree sexual assault. There is no criminal intent if the defendant had a reasonable and good faith belief that the other person voluntarily consented to engage in sexual intercourse. Therefore, a reasonable and good faith belief that there was voluntary consent is a defense to such charge.

If after consideration of all of the evidence you have a reasonable doubt that the defendant had criminal intent at the time of sexual intercourse, you must find him not guilty of such crime.

. . . .

PROPOSED INSTRUCTION NO. 2:

In prosecutions for first degree sexual assault, the word "consent" means positive cooperation in an act or attitude

as an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved.

To establish reversible error from a trial court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998); *State v. Parks*, 253 Neb. 939, 573 N.W.2d 453 (1998).

However, whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence. Because of this duty, the trial court, on its own motion, must correctly instruct on the law. *State v. Adams*, 251 Neb. 461, 558 N.W.2d 298 (1997). The trial court is required to give an instruction where there is any evidence, which could be believed by the trier of fact, in support of a legally cognizable theory of defense. See *State v. Kinser*, 252 Neb. 600, 567 N.W.2d 287 (1997). Notwithstanding, all the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *State v. Allen*, 252 Neb. 187, 560 N.W.2d 829 (1997); *State v. White*, 249 Neb. 381, 543 N.W.2d 725 (1996).

Thus, the district court was incorrect to conclude that the jury need only receive instruction over the elements of the offense and not Koperski's theory or theories of defense. Further, the Court of Appeals did not address the issue of whether an instruction concerning Koperski's theory of defense was merited when it denied Koperski relief relying solely on its conclusion that Koperski's proffered instructions were not a correct statement of Nebraska law.

Accordingly, the issues before this court are whether consent is a defense to a charge of first degree sexual assault pursuant to § 28-319(1), and if so, whether any evidence was adduced in support of a legally cognizable theory of defense regarding consent. If such evidence was adduced, then the jury instructions given

must be analyzed to determine whether, when read as a whole, they are a correct statement of the law that adequately cover Koperski's theory or theories of defense and are not misleading.

Although lack of consent is not an element of § 28-319(1), it can hardly be said that consent is not an issue in regard to a charge of first degree sexual assault. Generally, the law may only proscribe nonconsensual sexual conduct, in other words, sexual conduct which is forced upon a person by another without the consent of such person, or where one person is incapable of consenting, or where, although there is consent, such consent is invalid due to, for example, the victim's minority or diminished mental capacity. However, it is evident that consent may well be an issue in a prosecution for first degree sexual assault even though lack of consent is not an express, substantive element of the crime. See *State v. Camara*, 113 Wash. 2d 631, 781 P.2d 483 (1989) (nonconsent traditionally has been essence of crime of rape).

Our cases certainly reveal that this court has, subsequent to the 1975 and 1977 revisions to our sexual assault statutes, considered consent to be an issue in regard to a charge of sexual assault. In *State v. Willis*, 223 Neb. 844, 848, 394 N.W.2d 648, 651 (1986), we noted that only "nonconsensual sexual intercourse" is proscribed by our revised first degree sexual assault statute. In *State v. Dondlinger*, 222 Neb. 741, 386 N.W.2d 866 (1986), we held that a genuine issue of fact regarding a victim's lack of consent presented a fact question for the jury to resolve. In *State v. Hopkins*, 221 Neb. 367, 377 N.W.2d 110 (1985), we recognized that the 1975 revisions to our criminal code limited the introduction of evidence of the victim's past sexual relations, except that evidence which was allowed to demonstrate a pattern of conduct probative as to the issue of the victim's consent.

It is true that consent is not a statutorily defined affirmative defense similar to the affirmative defenses of justification for the use of force pursuant to Neb. Rev. Stat. § 28-1406 et seq. (Reissue 1995). Neither is consent a statutorily defined affirmative defense specifically made part of our sexual assault statute similar to the affirmative defense made specifically applicable to the offense of unauthorized use of a propelled vehicle. See Neb. Rev. Stat. § 28-516(3) (Reissue 1995).

Nonetheless, consent can operate as a defense to a charge of first degree sexual assault pursuant to § 28-319(1)(a) for two reasons. First, consent may operate as a failure of proof in regard to the essential element of the use of force, or in regard to the essential element that the victim must be overcome. See *State v. Smith*, 210 Conn. 132, 140, 554 A.2d 713, 717 (1989) ("[a] finding that a complainant had consented would implicitly negate a claim that the actor had compelled the complainant by force or threat to engage in sexual intercourse"). See, also, Model Penal Code § 2.11 (1985); 1 Paul H. Robinson, Criminal Law Defenses §§ 66 and 108 (1984).

Second, consent becomes a defense to a charged crime when consent precludes the infliction of the harm or evil sought to be prevented by the law defining the offense. See, Model Penal Code § 2.11(1) (1985); Robinson, *supra*, § 66(a)(3). In this regard, consent, although a defense to sexual contact effected through the use of force between adults, can never be a defense to a charge of first degree sexual assault pursuant to § 28-319(1)(c), which makes criminal the sexual penetration of a child under the age of 16 when the assailant is 19 years of age or older. This is so because the harm sought to be prevented by § 28-319(1)(c) is the sexual exploitation of a child of tender years by an adult.

Accordingly, we conclude that consent may be a defense to a charge of first degree sexual assault pursuant to § 28-319(1)(a). The next step in our inquiry is to determine whether any evidence was adduced in the instant case which could be believed by the trier of fact, in support of a legally cognizable consent theory of defense.

Koperski asserts that his testimony, if believed by the trier of fact, demonstrates that he subjectively believed that by her conduct, K.O. had affirmatively consented to sexual penetration, or, at least, if she had not affirmatively consented to sexual penetration, no force other than that inherent in the act of consensual sexual intercourse was used to overcome her and effect sexual penetration. Koperski also asserts that his subjective belief that either K.O. was consenting or force was not used to overcome her was objectively reasonable.

The State argues Nebraska law does not countenance the notion that a defendant's subjective belief that an alleged victim

consented to sexual penetration is a defense to the crime of first degree sexual assault. This is so, the State contends, for two reasons. First, the harm sought to be prevented by the offense describing first degree sexual assault is any nonconsensual sexual penetration wherein force is used to overcome the victim. Because the defendant's subjective mistake of fact as to consent is a manifestation of this type of harm, it logically follows that a subjective belief of consent cannot be a defense to first degree sexual assault. Second, the 1975 revisions to Nebraska's sexual assault statutes purposefully intended to focus the inquiry on objective quantities, such as the victim's demonstrative and verbal conduct evincing consent, and not on the assailant's subjective beliefs.

One accused of first degree sexual assault does not produce a legally cognizable consent defense if the evidence adduced merely indicates that the defendant subjectively believed that the victim had consented to sexual penetration. A mistake of fact as to the victim's consent is likewise not a defense to first degree sexual assault.

The purpose of the 1975 revision of Nebraska's former rape statute effected with the passage of 1975 Neb. Laws, L.B. 23, was to make our law, with respect to sexual assault, gender neutral and treat the offense as one involving assaultive conduct, not sexual activity. Thus, L.B. 23 sought to shift the focus of the inquiry away from an examination of what the victim did or should have done and instead concentrate on the conduct of the assailant.

In that regard, this court, as well as the courts of other jurisdictions construing similar legislative enactments, have removed or limited the many evidentiary impediments made applicable to the former crime of rape which distinguished it from other assaultive offenses. For example, courts and legislatures have either abandoned or severely limited the requirement of corroboration of a victim's testimony, the requirement that the victim must offer palpable resistance, the requirement of prompt reporting, the spousal exemption, and evidence of a victim's prior sexual conduct. See, *State v. Willis*, 223 Neb. 844, 394 N.W.2d 648 (1986); *State in Interest of M.T.S.*, 129 N.J. 422, 609 A.2d 1266 (1992).

The common thread running through each of these abrogated impediments to proof is that, formerly, each was thought to be an essential evidentiary precaution so as to test whether the victim had consented to sexual penetration. Moreover, each, in effect, served to protect an accused's subjective belief that the victim had consented to sexual penetration, even when such belief was predicated on a mistake of fact whether reasonable or not. Abrogation of these impediments to proof necessarily means that an accused's subjective or mistaken belief as to a victim's consent is a harm which the 1975 legislative enactment sought to preclude.

Koperski argues that an accused's subjective belief that consent has been given to sexual penetration should act as a complete defense to the offense of first degree sexual assault if, and only if, this subjective belief is also objectively reasonable. However, no statutory authority exists for the proposition that an accused's subjective belief regarding consent should act as a defense to the crime of first degree sexual assault. If the element of the accused's subjective belief as to the alleged victim's state of mind is to be established as a defense to the crime of first degree sexual assault, then it should be done by our Legislature which has the power to define crimes and offenses.

Nonetheless, because consensual sexual intercourse is not a harm proscribed by legislative enactment, if, by examining the facts and circumstances of the accused's conduct, it is objectively reasonable to conclude that the alleged victim consented to sexual penetration, then the accused should be free from criminal culpability. The Supreme Court of Connecticut reached a similar conclusion in *State v. Smith*, 210 Conn. 132, 554 A.2d 713 (1989). Like § 28-319(1)(a), the Connecticut statute at issue in *State v. Smith* did not expressly make lack of consent an element of the crime of first degree sexual assault. Nevertheless, the court held that consent was a defense because it negated the statutory element of force. The court went on to explain how the defense of consent operates:

> While the word "consent" is commonly regarded as referring to the state of mind of the complainant in a sexual assault case, it cannot be viewed as a wholly subjective concept. Although the actual state of mind of the actor in

a criminal case may in many instances be the issue upon which culpability depends, a defendant is not chargeable with knowledge of the internal workings of the minds of others except to the extent that he should reasonably have gained such knowledge from his observations of their conduct. . . . [W]hether a complainant has consented to intercourse depends upon her manifestations of such consent as reasonably construed. If the conduct of the complainant under all the circumstances should reasonably be viewed as indicating consent to the act of intercourse, a defendant should not be found guilty because of some undisclosed mental reservation on the part of the complainant. Reasonable conduct ought not to be deemed criminal.

*Id.* at 140-41, 554 A.2d at 717. Likewise, in *State v. Ayer*, 136 N.H. 191, 195-96, 612 A.2d 923, 926 (1992), the New Hampshire Supreme Court stated:

The defendant argues that the purported lack of consent must be communicated to a defendant in some way in order for him to be guilty. To the extent he means by this that the victim must manifest her unwillingness objectively, the defendant is correct. If, however, the victim objectively communicates lack of consent and the defendant subjectively fails to receive the message, he is guilty. The appropriate inquiry is whether a reasonable person in the circumstances would have understood that the victim did not consent.

In this regard, we agree with the reasoning of the Connecticut and New Hampshire courts. Accordingly, for criminal prosecutions brought under § 28-319(1)(a), we hold that the trial court must instruct the jury on the defense of consent when evidence is produced which, under all of the circumstances, could reasonably be viewed by the jury as an indication of affirmative and freely given consent to sexual penetration by the alleged victim. The focus remains on the accused's conduct in determining whether or not the accused has overcome the alleged victim, resulting in sexual penetration against his or her will.

In the instant case, Koperski's testimony, if believed by the trier of fact, could allow it to conclude that Koperski believed that K.O. had affirmatively and freely consented to sexual inter-

course through her conduct, that Koperski's belief was objectively reasonable at the time of the sexual act, and that Koperski stopped when K.O. verbally indicated that she no longer consented. Whether the totality of the circumstances reasonably indicated that K.O. freely and affirmatively consented to sexual penetration by Koperski is a question of fact for the jury. Because enough evidence had been produced in support of a legally cognizable theory of defense, we determine that the issue of consent should have been submitted to the jury.

We now turn our attention to examining whether the jury instructions, when read as a whole, correctly state the law, are not misleading, and adequately cover the issues supported by the evidence, notwithstanding the trial court's refusal to instruct the jury on the issue of consent.

The State argues that Koperski was not prejudiced by the instructions given because the issue of consent is the analytical opposite of the essential element that the victim must be overcome by force or one of the other prohibited means. In other words, the issue of consent is subsumed in the instruction regarding the substantive elements of the offense.

Similarly, in refusing Koperski's proffered jury instructions regarding consent, the trial court expressed the view that making consent a separate element or aspect of the case was confusing. Instead of an instruction regarding Koperski's theory of defense, the trial court thought it sufficient to simply not prohibit Koperski from arguing the issue of consent in his closing statement to the jury.

Contrary to the trial court's intuition, failing to instruct the jury regarding Koperski's consent theory of defense was in fact a source of confusion as evidenced by the jury's question to the court during deliberations asking whether it could even consider the issue of consent. Moreover, the trial court added to the jurors' confusion by not defining the term "force," but, instead, defining the term "coercion" in the instant case. The State's theory of criminal culpability was that Koperski used force to overcome K.O. and effect sexual penetration. Even though K.O. testified that Koperski begged her for sex, she did not indicate that sexual penetration was effected due to coercion.

In this regard, instructing the jury as to the meaning of "coercion" was not only confusing but was clearly prejudicial, as the jury is thus instructed over an issue not supported by the evidence adduced. See *State v. Adams*, 251 Neb. 461, 558 N.W.2d 298 (1997). The jury was further instructed that criminal culpability could be predicated on a finding that Koperski overcame K.O. by threat of force, express or implied; coercion; or deception, even though no evidence was adduced supporting any of these theories.

We cannot agree with the State that an instruction regarding the substantive elements of the offense subsumes an instruction regarding Koperski's consent theory of defense. An instruction regarding the substantive elements of the offense alone fails to apprise the jury that an alleged victim's consent must be affirmatively and freely given, that such consent may be manifested by words or conduct, and that from the facts and circumstances in regard to the accused's conduct, it must be objectively reasonable to conclude that consent was given by the alleged victim. Thus, we determine that the trial court erred in not submitting the issue of consent to the jury and that such error was prejudicial to Koperski.

Finally, pursuant to *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994), the Court of Appeals found that the trial court did not err in refusing Koperski's proffered instruction because intent was not an element of first degree sexual assault and that the focus of the proffered instruction impermissibly shifted the inquiry from the wrongful conduct of Koperski to the state of mind of K.O. Further, the Court of Appeals stated that the trial court erred in its instructions in favor of Koperski when it required the State to prove that Koperski *intentionally* subjected K.O. to sexual penetration. We address the issue of intent because this cause is being remanded for a new trial.

In *State v. Trackwell, supra*, the defendant was convicted by a jury of first degree sexual assault. We vacated the conviction on the grounds of improper comment by the prosecutor during closing arguments. We then addressed Trackwell's assigned error regarding the trial court's failure to instruct the jury on intent as an element of first degree sexual assault. We concluded that intent was not an element of first degree sexual assault as

defined by the statute and therefore found no error in the court's instruction.

The absence of words in a statute requiring a certain mental state does not warrant the assumption that the Legislature intended to impose strict liability. To the contrary, at least for an offense as serious as sexual assault, it should be presumed that the Legislature intended to follow the usual mens rea requirement unless excluded expressly or by necessary implication. See 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 5.1(b) (1986).

While it is correct that § 28-319(1)(a) does not expressly state any requisite level of criminal intent with regard to any of the elements of the crime and first degree sexual assault is clearly not a specific intent crime, we conclude that first degree sexual assault under § 28-319(1)(a) is, nevertheless, a general intent crime. See, *State v. Smith*, 210 Conn. 132, 136, 554 A.2d 713, 715 (1989) (" '[i]t is well settled that first degree sexual assault is a general intent crime' "); *Peck v. Dunn*, 574 P.2d 367 (Utah 1978) (murder, rape, and kidnapping are examples of general intent crimes); *Sanchez v. State*, 567 P.2d 270 (Wyo. 1977) (rape is commonly classified as general intent crime). As a general intent crime, criminal intent is inferred from the commission of the acts constituting the elements of the crime of first degree sexual assault. *State v. Smith, supra*; *State v. Boone*, 307 N.C. 198, 297 S.E.2d 585 (1982); *State v. Keyonnie*, 91 N.M. 146, 571 P.2d 413 (1977); *Sanchez v. State, supra*. Therefore, the only burden on the prosecution in order to prove general criminal intent under § 28-319(1)(a) is to prove beyond a reasonable doubt that the accused subjected another person to sexual penetration and overcame the victim by force, threat of force, coercion, or deception. To the extent that our decision in *State v. Trackwell, supra*, conflicts with this opinion, it is expressly disapproved. Thus, the foregoing reasoning leads us to conclude that the Court of Appeals was correct regarding the issue of requisite intent when it stated that the district court erred by instructing the jury that Koperski must have *intentionally* sexually penetrated K.O. but that such error was not prejudicial to Koperski.

## CONCLUSION

Accordingly, we conclude that the district court committed prejudicial error by failing to instruct the jury in regard to Koperski's consent theory of defense. Having so held, it is unnecessary for us to address Koperski's assigned error regarding the ex parte contact between the trial judge and jury. Therefore, we reverse the judgment of the Court of Appeals and remand this matter with directions that it vacate the district court's judgment and remand this cause to the district court for a new trial.

REVERSED AND REMANDED WITH DIRECTIONS.