State of Nebraska, appellee, v.
Gregory M. Mucia, appellant.
___ N.W.2d ___

Filed October 30, 2015.    No. S-14-070.

1. **Statutes: Judgments: Appeal and Error.** The meaning of a statute is a
   question of law, on which an appellate court has an obligation to reach
   an independent conclusion irrespective of the decision made by the
   court below.
2. **Statutes: Legislature: Intent.** In reading a statute, a court must deter-
   mine and give effect to the purpose and intent of the Legislature as
   ascertained from the entire language of the statute considered in its
   plain, ordinary, and popular sense.
3. **Obscenity: Minors.** A person knowingly possesses child pornography
   in violation of Neb. Rev. Stat. § 28-813.01 (Cum. Supp. 2014) when he
   or she knows of the nature or character of the material and of its pres-
   ence and has dominion or control over it.

Petition for further review from the Court of Appeals,
Irwin, Inbody, and Pirtle, Judges, on appeal thereto from the
District Court for Lancaster County, Karen B. Flowers, Judge.
Judgment of Court of Appeals affirmed.

Sean J. Brennan for appellant.

Douglas J. Peterson and Jon Bruning, Attorneys General,
and Melissa R. Vincent for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller-
Lerman, and Cassel, JJ.

McCormack, J.

## NATURE OF CASE

We granted further review of the Nebraska Court of Appeals' opinion that affirmed the conviction of appellant, Gregory M. Mucia, of possession of child pornography.[1] The issue raised in the State's petition concerns the meaning of the phrase "knowingly possess" as used in Neb. Rev. Stat. § 28-813.01 (Cum. Supp. 2014), which makes it illegal to "knowingly possess any visual depiction" of child pornography.

## BACKGROUND

Though the relevant facts are summarized below, greater detail may be found in the Court of Appeals' opinion.[2]

In 2011, Mucia was 23 years old and living with his younger brother in an apartment in Lincoln, Nebraska. On October 24, a search warrant for that apartment was issued after law enforcement software had detected 10 files suspected to be child pornography "available for sharing" from an Internet protocol address linked to the apartment. The next day, Corey Weinmaster, a Lincoln Police Department investigator, executed the warrant and lawfully seized Mucia's two laptop computers.

A forensic search of the computers produced evidence of child pornography. Most notably, four videos of child pornography were located in a folder created by a file-sharing program; that folder had been placed within a "Music" folder. In addition to the four videos in that folder, Weinmaster found 14 files in the recycle bin on Mucia's computer, which Weinmaster later testified were still accessible and able to be restored. Weinmaster also recovered a number of incomplete files, files recovered from the browser cache, and link files, which Weinmaster testified were related to child pornography.

At his 2-day bench trial, Mucia admitted to using file-sharing programs to download multiple pornographic images

---

[1] *State v. Mucia*, 22 Neb. App. 821, 862 N.W.2d 89 (2015).

[2] *Id.*

and videos at once, i.e., "'batch downloading'" pornography. Mucia testified that he intended to obtain adult pornography and that he never intentionally searched for or intentionally obtained child pornography.

Mucia admitted there were times he suspected some of the files he downloaded contained child pornography. But Mucia testified that when he saw or suspected that an image or video depicted a child in a sexually explicit manner, he would delete the file because he "didn't want anything to do with child pornography" and "wasn't interest[ed] in it at all." Mucia testified he was unaware that the four videos found by Weinmaster were on his computer.

The trial court found Mucia guilty of possession of child pornography, age 19 and over, which is a Class IIA felony, and sentenced him to 3 years' probation. Mucia's conviction also caused him to be subject to the Nebraska Sex Offender Registration Act.

Mucia appealed his conviction to the Court of Appeals. Of relevance to this review, Mucia assigned that the trial court erred in finding that the State adduced sufficient evidence to demonstrate Mucia "knowingly" possessed child pornography. Mucia argued that the evidence showed he did not knowingly save illegal files, but "unintentionally received illegal files and subsequently deleted them whenever he discovered their presence."[3] He asserted that the "few undeleted files that remained were not knowingly possessed,"[4] and the State did not present evidence to overcome that defense.

In the Court of Appeals' opinion, it determined that "§ 28-813.01 requires sufficient proof that [Mucia] had the specific intent to possess child pornography, and not merely a general intent to download files that, unbeknownst to him, turned out to be child pornography."[5] After finding such proof

---

[3] Brief for appellant at 17.

[4] *Id.*

[5] *State v. Mucia, supra* note 1, 22 Neb. App. at 830, 862 N.W.2d at 96.

and resolving all other issues, the Court of Appeals affirmed Mucia's conviction.

In response to the Court of Appeals' interpretation of § 28-813.01, the State timely filed a petition for further review, which was granted.

## ASSIGNMENT OF ERROR

In its petition for further review, the State assigns that "[t]he Court of Appeals erred in finding that *knowing* possession of child pornography in violation of Neb. Rev. Stat. § 28-813.01 (Cum. Supp. 2010) is a specific intent crime that requires the State to prove the defendant *intentionally* sought out files depicting child pornography." (Emphasis in original.)

## STANDARD OF REVIEW

[1] The meaning of a statute is a question of law, on which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[6]

## ANALYSIS

In both the State's brief and at oral argument, the State places great emphasis on the classification of the violation of § 28-813.01 as a "general intent" or "specific intent" crime. The State argues that violation of § 28-813.01 is a "general intent" crime and that the Court of Appeals inaccurately classified it as a "specific intent" crime.[7] The State is concerned that the Court of Appeals' interpretation of § 28-813.01 requires the State to prove, in a child pornography case, that the defendant intentionally "sought out" child pornography and "exclude[s] from the statute's reach any person who comes into possession of child pornography unintentionally but nevertheless decides to keep it."[8]

---

[6] *State v. Lasu*, 278 Neb. 180, 768 N.W.2d 447 (2009).

[7] Memorandum brief for appellee in support of petition for further review at 6-9.

[8] *Id.* at 9.

We do not believe the classification of the violation of § 28-813.01 as a "general intent" or "specific intent" crime is helpful in determining what the statute requires. These terms have been the source of considerable confusion, perhaps because of the inconsistent definitions given to these terms over time.[9] Indeed, the Court of Appeals and the State appear to define these terms differently. The Court of Appeals used the terms "specific intent" and "general intent" to distinguish between an intent to possess child pornography and an "intent to possess files that, unbeknownst to the defendant, turn out to be child pornography."[10] The State, on the other hand, appears to use the term "general intent" the way the Court of Appeals used "specific intent," and uses "specific intent" to mean that a defendant must have intentionally sought out files depicting child pornography in order to have violated § 28-813.01.

We return to the language of § 28-813.01(1), which provides: "It shall be unlawful for a person to knowingly possess any visual depiction of sexually explicit conduct . . . which has a child . . . as one of its participants or portrayed observers." The issue faced by the Court of Appeals, and the issue we face today, is the meaning of the phrase "knowingly possess."

[2] In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[11]

Section 28-813.01 makes no reference to the intentional *seeking* of child pornography, and the State mischaracterizes the Court of Appeals' opinion as "interpreting § 28-813.01 to require proof that the defendant intentionally *sought out* files

---

[9] See 1 Wayne R. LaFave, Substantive Criminal Law § 5.2(e) (2d ed. 2003) (citing courts' various definitions of "general intent" and "specific intent").

[10] *State v. Mucia, supra* note 1, 22 Neb. App. at 830, 862 N.W.2d at 96.

[11] *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011); *State v. Lasu, supra* note 6.

depicting child pornography."[12] Although the Court of Appeals did note that "the State was unable to adduce direct evidence that Mucia intentionally sought out child pornography files," the Court of Appeals never indicated such evidence was required.[13] Instead, the Court of Appeals held that "§ 28-813.01 requires sufficient proof that [Mucia] had the specific intent to *possess* child pornography."[14] The Court of Appeals stated that despite the lack of direct evidence that Mucia intentionally sought out child pornography, "the evidence [actually adduced] circumstantially supports a conclusion that Mucia *knowingly possessed* child pornography."[15]

In reaching the conclusion that a conviction under § 28-813.01 requires proof of the "specific intention to possess child pornography," the Court of Appeals stated it was unable to locate any Nebraska cases on the question but found *State v. Schuller*[16] instructive.

In *Schuller*, this court found that the evidence was sufficient to support a finding that the defendant had knowingly possessed child pornography. The defendant admitted to purposefully searching the Internet for child pornography, downloading child pornography, and watching child pornography before deleting it. Despite the defendant's efforts to delete the files, remnants of the files remained on his hard drive at the time it was confiscated.

We applied the common-law principle of constructive possession, which "may be proved by mere ownership, dominion, or control over contraband itself, coupled with the intent to exercise control over the same,"[17] and explained that the

---

[12] Memorandum brief for appellee in support of petition for further review at 9 (emphasis omitted) (emphasis supplied).

[13] *State v. Mucia, supra* note 1, 22 Neb. App. at 832, 862 N.W.2d at 98.

[14] *Id.* at 830, 862 N.W.2d at 96 (emphasis supplied).

[15] *Id.* at 832, 862 N.W.2d at 98 (emphasis supplied).

[16] *State v. Schuller*, 287 Neb. 500, 843 N.W.2d 626 (2014).

[17] *Id*. at 511, 843 N.W.2d at 635.

remnants of the files on the defendant's hard drive, coupled with the fact that he "repeatedly searched for, downloaded, viewed, and deleted child pornography,"[18] constituted knowing possession, not merely viewing.

We acknowledged there was "no question that [the defendant] *knowingly* possessed those files,"[19] because his confession confirmed he acted knowingly. But we emphasized that the defendant "did not simply click on an innocuous banner advertisement and end up at a child pornography Web site"[20]; he knowingly downloaded them.

In response to the defendant's argument in *Schuller*, that downloading alone could not be sufficient evidence of possession, we said:

> [W]e agree that just because child pornography was downloaded onto a computer does not necessarily mean that there was knowing possession. Take, for example, a person who was legally browsing adult pornography online but mistakenly clicked on a link leading him to a child pornography Web site, which he immediately closed. The record shows that, in such a situation, child pornography would be downloaded to the computer's "cache" folder as temporary Internet files, through no further action by the user. In such a case, the person would not be guilty of knowingly possessing child pornography—he neither downloaded the files knowingly nor constructively possessed them, because there was no intent to control them.[21]

We then explained that such was not the case in *Schuller*.

We have previously said that the meaning of "knowingly" in a criminal statute commonly imports a perception of facts

---

[18] *Id.* at 509, 843 N.W.2d at 633.

[19] *Id*. at 512, 843 N.W.2d at 635 (emphasis in original).

[20] *Id*. at 511, 843 N.W.2d at 635.

[21] *Id.* at 514, 843 N.W.2d at 636.

required to make up the crime.[22] That evidentiary standard has been routinely used in cases where a defendant has been charged with possessing contraband other than child pornography. For example, we have said that a person knowingly possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it.[23] We see no reason for a different standard when the contraband is child pornography.

[3] Accordingly, we hold that a person knowingly possesses child pornography in violation of § 28-813.01 when he or she knows of the nature or character of the material and of its presence and has dominion or control over it. The means or methods of exercising dominion or control over an electronic image may well differ from those typically applicable to physical contraband. But we need not address such questions in the case before us.

We note that Mucia does not challenge the Court of Appeals' conclusion that there was sufficient circumstantial evidence to support a finding that Mucia knowingly possessed child pornography. We therefore do not question that finding.

## CONCLUSION

Our holding is consistent with the Court of Appeals' opinion, and we therefore affirm.

Affirmed.

Stacy, J., not participating.

---

[22] See, *State v. Mills*, 199 Neb. 295, 258 N.W.2d 628 (1977); *R. D. Lowrance, Inc. v. Peterson*, 185 Neb. 679, 178 N.W.2d 277 (1970).

[23] See, *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011); *State v. Neujahr*, 248 Neb. 965, 540 N.W.2d 566 (1995); *State v. DeGroat*, 244 Neb. 764, 508 N.W.2d 861 (1993).

Connolly, J., concurring.

I agree with the majority's implicit conclusion that under Neb. Rev. Stat. § 28-813.01 (Cum. Supp. 2014), a person

knowingly possesses child pornography on a computer when the person exercises dominion or control over the computer or any external component containing the images; knows that the images are stored on the computer or external component; and knows that they depict sexually explicit conduct involving a child.[1] I write separately because I believe the Nebraska Court of Appeals incorrectly characterized the statute as a specific intent crime. Additionally, I part company with the majority's suggestion that the concepts of general and specific intent are too ill defined to be helpful in determining the proof requirements of criminal offenses.

It is true that the distinction between general and specific intent is sometimes confusing. And the answer is not always obvious. But the distinction was clearly relevant in the Court of Appeals' decision: "§ 28-813.01 requires sufficient proof that [a defendant] had the specific intent to possess child pornography, and not merely a general intent to download files that, unbeknownst to him, turned out to be child pornography."[2] This is the holding that the State has petitioned this court to further review.

I acknowledge that this is a difficult issue, primarily because of a paucity of published opinions deciding this issue.[3] But there are well-reasoned unpublished decisions holding that the possession of child pornography is a general intent crime.[4] And the Court of Appeals' conclusion that § 28-813.01 sets forth a specific intent crime is against the weight of the

---

[1] See *U.S. v. Wright*, 625 F.3d 583 (9th Cir. 2010).

[2] *State v. Mucia*, 22 Neb. App. 821, 830, 862 N.W.2d 89, 96 (2015).

[3] See, e.g., *State v. Cooley*, 165 So. 3d 1237 (La. App. 2015).

[4] See, *United States v. Ballieu*, 480 Fed. Appx. 494 (10th Cir. 2012); *United States v. Larson*, 346 Fed. Appx. 166 (9th Cir. 2009); *U.S. v. Benz*, No. 4:13CR3121, 2015 WL 575094 (D. Neb. Feb. 11, 2015) (unpublished memorandum and order); *People v. Artieres*, No. A123661, 2011 WL 901985 (Cal. App. Mar. 16, 2011) (unpublished opinion). See, also, *U.S. v. Dyer*, 589 F.3d 520 (1st Cir. 2009).

authority, even if much of it is unpublished. Besides, the Court of Appeals' holding is contrary to our holding and statements in *State v. Thurman*.[5]

In *Thurman*, we rejected the defendant's argument that because his convictions for first degree sexual assault and false imprisonment were general intent crimes, they could not be the predicate offense underlying his conviction for use of a weapon to commit a felony. We acknowledged that we have held an unintentional crime cannot be the predicate offense.[6] But we rejected the argument that first degree sexual assault, which contains no mens rea component,[7] could not be a predicate offense. We reasoned that it does not lack an intent component. Citing *State v. Koperski*,[8] we stated that for general intent crimes, the defendant's intent is inferred from his commission of the acts constituting the elements of the crime.

Perhaps we could have been more explicit. But we implicitly meant that for general intent crimes, the State is only required to prove that a defendant intended to commit the acts proscribed by statute and that this intent is shown by proving that the defendant did commit those acts.

In support of our conclusion that false imprisonment—which has a "knowledge" mens rea component[9]—is also a general intent crime, we quoted the U.S. Supreme Court's decision in *United States v. Bailey*[10]:

> The U.S. Supreme Court has held that "'the limited distinction between knowledge and purpose has not been considered important since "there is good reason for imposing liability whether the defendant desired or

---

[5] *State v. Thurman*, 273 Neb. 518, 730 N.W.2d 805 (2007).

[6] See *id.*, citing *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989).

[7] See Neb. Rev. Stat. § 28-319(1) (Reissue 2008).

[8] *State v. Koperski*, 254 Neb. 624, 578 N.W.2d 837 (1998).

[9] Neb. Rev. Stat. § 28-314(1) (Reissue 2008).

[10] *United States v. Bailey*, 444 U.S. 394, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980).

merely knew of the practical certainty of the results."'"
The Court also noted that "'purpose' corresponds loosely
with the common-law concept of specific intent, while
'knowledge' corresponds loosely with the concept of gen-
eral intent."

Given this "limited distinction," it is clear that *since
the State must show [the defendant] acted knowingly in
order to show he falsely imprisoned [the victim], such a
requirement is an indication that first degree false impris-
onment as charged in this case is a general intent crime.*
As noted above, with a general intent crime, a showing of
intent by the State is required, but may be inferred from
the commission of the acts constituting the elements of
the crime.[11]

In sum, in *Thurman*, we rejected the defendant's argument
that false imprisonment could not be the predicate offense for
use of a weapon to commit a felony because the "knowingly"
component of § 28-314 showed it was a general intent crime;
as such, the defendant must have intended to commit the acts
that the statute proscribed. That conclusion is consistent with
other cases in which we have discussed the distinction between
general and specific intent crimes.

For example, in *State v. Tucker*,[12] we discussed the general/
specific intent distinction because it was relevant to reject-
ing the defendant's argument that his convictions were
inconsistent:

We find no inherent inconsistency between the trial
court's rejection of the murder charges and its conclusion
that [the defendant] had committed intentional assault
or intentional terroristic threats. . . . While it may at
first appear the judge concluded the same act was both
intentional and unintentional, a closer examination of the

---

[11] *Thurman, supra* note 5, 273 Neb. at 525, 730 N.W.2d at 812 (emphasis
supplied), quoting *Bailey, supra* note 10.

[12] *State v. Tucker*, 278 Neb. 935, 774 N.W.2d 753 (2009).

object of the mens rea for the different offenses reveals that the crimes do not involve the same act and that the judge's findings were reconcilable.

Both first and second degree murder are specific intent crimes. Thus, by acquitting [the defendant] of first and second degree murder, the trial court made the implicit finding that [the defendant] lacked the specific intent to kill and that he also lacked the specific intent to commit any of the listed felonies for felony murder. . . .

The crime of terroristic threats requires the specific intent to terrorize, not an intent to kill, and it is not one of the felonies listed for felony murder. Assault is a general intent crime that requires only the intent to commit the assault, and not the specific injury that results. Assault also is not a listed predicate felony for felony murder. It was consistent for the court to conclude that [the defendant] intended to commit assault but did not intend for [the victim] to die as a result of the assault. It was likewise legally consistent for the court to conclude that [the defendant] intended to terrorize [the victim], but did not intend to kill him.[13]

*Thurman* and *Tucker* illustrate that the distinction between general and specific intent crimes is frequently a relevant consideration. And our case law seems to be generally consistent with the explanation in *Tucker* of these terms.[14] In short, for specific intent crimes, a defendant must have intended to cause a specific result by his conduct.[15] For example, in *State v. Ramsay*,[16] we held that

---

[13] *Id.* at 942-43, 774 N.W.2d at 759-60.

[14] See, e.g., *Thurman, supra* note 5; *State v. Robbins*, 253 Neb. 146, 570 N.W.2d 185 (1997); *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993). See, also, 25 Am. Jur. 2d *Drugs and Controlled Substances* § 156 (2014).

[15] See, Black's Law Dictionary 931 (10th ed. 2014); 21 Am. Jur. 2d *Criminal Law* § 119 (2008 & Cum. Supp. 2015).

[16] *State v. Ramsay*, 257 Neb. 430, 436, 598 N.W.2d 51, 56 (1999).

> because the offense of unlawful discharge of a firearm
> requires a specific intent, in order to convict [the defend-
> ant] as an aider and abettor, the State was required to
> prove either that he intended to discharge a firearm into
> the residence or that he knew that [the principal] pos-
> sessed such an intent prior to committing the act.

In contrast, when a statute simply proscribes specified con-
duct, the statute sets forth a general intent crime and the State
only needs to show that the defendant knew what he was
doing—i.e., understood the nature of his acts—and intended
to commit the acts that constitute the crime. The State does
not have to prove that the defendant intended to cause a pro-
scribed result or to violate a specific statute.[17] And in *Thurman*,
we applied the same principles to an offense with a mens rea
requirement of knowledge.

It is true that in *Bailey*, the U.S. Supreme Court stated that
the distinction between general and specific intent crimes has
been a source of confusion because, historically, courts have
not consistently used the terms to mean the same thing.[18] For
that reason, the Court stated that the Model Penal Code substi-
tutes a hierarchy of culpable mental states—acting with pur-
pose, knowledge, recklessness, or negligence.[19]

But the Court acknowledged that even under the Model
Penal Code's hierarchy, the distinction between the mental
states of knowledge and purpose remains the most significant
and esoteric; it pointed out that for some crimes, that distinc-
tion remains important.[20] That is, punishment for some crimes
hinges on a mental state that shows a heightened culpability.[21]
Similarly, legal commentators have pointed out that although

---

[17] See, Black's Law Dictionary, *supra* note 15; 21 Am. Jur. 2d, *supra* note 15, § 118.

[18] See *Bailey, supra* note 10.

[19] See, *id.*; Model Penal Code § 2.02, 10A U.L.A. 92 (2001).

[20] See *Bailey, supra* note 10.

[21] See *id.*

the Model Penal Code has abandoned the distinction between general intent and specific intent, the distinction "is not without importance in the criminal law."[22] Our case law is consistent with that statement.

In particular, the distinction between general and specific intent is important when a defendant claims that his or her diminished capacity should be a defense to a crime, because that defense is irrelevant to general intent crimes.[23] Additionally, when a statute fails to specify a mental state, many courts have held that the statute sets out a general intent crime.[24] We have followed this reasoning.[25]

So, I do not think we should imply that the general/specific intent dichotomy is archaic or irrelevant. Instead, we should focus on the more important issue that the U.S. Supreme Court discussed in *Bailey*: whether a required mental state applies to every element of the crime.[26] And this analysis will sometimes require courts to ask what kind of culpability is needed for each material element to establish the offense.

As stated, the Court of Appeals concluded that under § 28-813.01, a defendant must have a specific intent to possess child pornography, and not merely a general intent to download files that, unbeknownst to him, turned out to be child pornography. I agree that the statute does not criminalize the downloading of electronic files with child pornography unless the evidence establishes that the defendant knew the files contained child pornography. A person cannot knowingly possess contraband unless he or she knows the nature of the material.

---

[22] See 1 Wayne R. LaFave, Substantive Criminal Law § 5.2(e) at 355 (2d ed. 2003).

[23] See, e.g., *U.S. v. Jackson*, 248 F.3d 1028 (10th Cir. 2001). Compare *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2014).

[24] See 21 Am. Jur. 2d, *supra* note 15, § 118.

[25] See *Koperski, supra* note 8.

[26] See *Bailey, supra* note 10.

Contrary to the State's argument, this conclusion does not require the State to prove that a defendant intentionally sought out files depicting child pornography. The Legislature did not proscribe *knowingly receiving* child pornography; it proscribed *knowingly possessing* it.[27] Yet, the Court of Appeals incorrectly held that the statute requires proof that a defendant had the specific intent to possess child pornography.

Because this is a general intent statute, the State is only required to show that Mucia knowingly possessed child pornography, not that he purposefully possessed it. And I do not think this is a case in which the distinction between purposeful and knowing possession is irrelevant. For example, if a fact finder determines that a defendant had dominion or control over a computer and knew that child pornography was stored on it, the defendant would be guilty of knowingly possessing child pornography even if the defendant allowed access to another person who had downloaded the materials to the computer.[28]

The Legislature's intent in prohibiting the possession of child pornography is clearly to stop activities that perpetuate the sexual exploitation of children.[29] Possessing child pornography is an activity that perpetuates this societal scourge regardless of whether a person only knowingly possesses it or purposefully possesses it. Accordingly, I would overrule the Court of Appeals' holding that § 28-813.01 requires the State to prove that a defendant had the specific intent to possess child pornography. The statute requires the State to prove a defendant knowingly did so.

In sum, contrary to the tenor of the majority opinion, I believe that the distinction between general and specific intent continues to have relevance in criminal law and that it has relevance under § 28-813.01.

---

[27] Compare 18 U.S.C. § 2252A(a)(2) and (a)(5)(B) (2012).

[28] See *Wright, supra* note 1.

[29] Compare Annot., 2 A.L.R. Fed. 2d 533, § 2 (2005).